**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Daniel Leonard AGER, Defendant–Appellant.**

No. 94CA0309.

Colorado Court of Appeals, Div. I.

May 2, 1996.

Rehearing Denied May 30, 1996.

Certiorari Denied Nov. 25, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, and John J. Krause, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Thomas R. Williamson and C. Keith Pope, Deputy State Public Defenders, Denver, for Defendant–Appellant.

Opinion by Justice QUINN.*

Defendant, Daniel Leonard Ager, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree (felony) murder, two counts of first degree assault, and accessory to murder in the first degree. He also appeals the consecutive nature of the sentences for first degree murder and first degree assault. We affirm.

The prosecution presented evidence that on the night of the homicide, defendant and two friends began drinking in a bar, and then went to the friends' home. After consuming more alcoholic beverages, defendant and his friends decided to go to the victim's trailer to confront him about certain rumors concerning the victim's molestation of a young girl. The victim answered defendant's knock on the door, and defendant immediately assaulted the victim. During the scuffle, defendant gained control of a club that the victim was using to defend himself and beat on the victim many times. Defendant then grabbed a knife from the kitchen, cut the victim's throat, and stabbed him in the side.

Upon his conviction, the court sentenced the defendant to life for first degree murder, 32 years for first degree assault, and 10 years for accessory to murder. The latter sentences were made consecutive to the life sentence but concurrent with each other.

Defendant's companions were also charged with first degree murder, but the charges were dismissed prior to the defendant's trial under plea agreements in which the companions pled guilty to accessory to first degree murder, a class four felony, and second degree assault.

## I.

Defendant argues that the indictment was insufficient because the absence of some of the grand jury members during the intro-

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. (1995 Cum.Supp.)

duction of evidence at several grand jury proceedings was a structural error that mandates dismissal of the indictment. We disagree.

The United States Supreme Court has described "structural defects" as those constitutional violations which affect the very "framework within which the trial proceeds" and thus defy analysis by harmless error standards, as distinguished from a constitutional error "in the trial process itself" which is subject to harmless error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331 (1991); *see also Luu v. People*, 841 P.2d 271 (Colo. 1992).

Examples of structural defects include total deprivation of the right to counsel, unlawful exclusion of members of the defendant's race from a grand jury, and partial or biased trial judges. *Arizona v. Fulminante, supra*. However, the absence of some grand jury members during the presentation of evidence to that body does not rise to the level of a structural defect.

Colo. Const. art. II, § 23, provides that "a grand jury shall consist of twelve persons, any nine of whom concurring may find an indictment." *See also* § 13–72–102, C.R.S. (1995 Cum.Supp.) (grand jury shall consist of twelve persons, and assent of nine members required to return true bill).

The grand jury sits not to determine guilt or innocence but to determine whether there is probable cause to believe that a crime was committed and that a specific person committed the crime. *United States v. Williams*, 504 U.S. 36, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992); *United States v. Byron*, 994 F.2d 747 (10th Cir.1993); *People v. Maestas*, 199 Colo. 143, 606 P.2d 849 (1980). Because the grand jury is an accusatory and not an adjudicatory body, there is no constitutional requirement that a grand jury hear and consider exculpatory evidence. *United States v. Williams, supra; United States v. Byron, supra; United States v. Leverage Funding Systems, Inc.*, 637 F.2d 645 (9th Cir.1980).

Moreover, it must be presumed that a grand juror who votes to indict has heard sufficient evidence to believe that a trial is warranted. *United States v. Leverage Funding Systems, Inc., supra*. Since the evidence missed by an absent juror would only be inculpatory, once enough evidence has been presented to establish probable cause, further inculpatory evidence would only be cumulative and unnecessary for a valid vote to indict. *McCann v. Thompson*, 144 F.2d 604 (2d Cir.1944).

Here, the grand jury convened and heard evidence on six occasions. A quorum of at least nine jurors was present at each session, while only seven, or at best eight, of the nine jurors required to indict could have heard all of the evidence presented. The trial court, in ruling on defendant's motion to dismiss the indictment, determined that all of the grand jurors were present when defendant elected to testify before the grand jury and that no exculpatory evidence was presented in those sessions where some jurors were absent. Under the circumstances present here, we conclude that there was no structural error in the grand jury proceedings.

## II.

Defendant argues that the district court erred in failing to instruct the jurors that they had to agree unanimously upon which ulterior crime, assault or harassment, supported the burglary offense that was the predicate for the felony murder count. We find no reversible error.

Initially, we note that defendant does not direct us to any part of the record that would indicate either that he objected to the pertinent jury instructions or that he tendered any separate unanimity instruction. Therefore, our analysis here is under the plain error standard of review. Under that standard we review the entire record to see if the alleged error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. *People v. Kruse*, 839 P.2d 1 (Colo.1992).

Jury instructions generally are adequate if they specify the alternative ways by which the crime at issue may be committed. Jurors should be instructed that, in order to

convict the defendant, they must unanimously agree that the defendant's conduct satisfied any one of those alternative ways. *People v. Ledman,* 622 P.2d 534 (Colo.1981); *People v. Taggart,* 621 P.2d 1375 (Colo.1981).

Here, the jury was instructed that "[i]n order to return a verdict, it is necessary that each juror agrees to it" and that the "verdict must be unanimous." The jury also was instructed that the elements of the crime of burglary are: "[t]hat the Defendant ... knowingly, broke an entrance into or entered or remained unlawfully in a dwelling, with intent to commit therein the crime of assault or harassment." Furthermore, the jury was instructed that, unless the prosecution proved beyond a reasonable doubt that defendant committed or attempted to commit burglary and caused the death of a person other than a participant in the burglary in the course of the burglary or attempted burglary, defendant was to be found not guilty.

■ When the record is considered as a whole, the failure of the court to instruct the jurors that their finding as to the ulterior offense supporting the predicate offense of burglary must be unanimous does not rise to the level of plain error. The jury returned a verdict finding that defendant committed first degree assault with a deadly weapon and assault in the first degree while committing another crime. Therefore, the jurors reached unanimous agreement that defendant committed at least one of the two ulterior crimes, which agreement was sufficient to support the burglary finding. *See Thomas v. People,* 803 P.2d 144 (Colo.1990) (special verdicts may provide assurance that a verdict is supported by unanimous jury agreement).

### III.

Defendant next contends that his conviction for felony murder must be reversed because the ulterior crime supporting the predicate burglary offense was assault, a crime not specifically included in the felony murder statute. We are not persuaded.

The felony murder statute, § 18–3–102(1)(b), C.R.S. (1995 Cum.Supp.), provides in pertinent part that a person commits the crime of first degree murder if:

Acting either alone or with one or more persons, he commits or attempts to commit arson, robbery, burglary, kidnapping, sexual assault in the first or second degree as prohibited by section 18–3–402 or 18–3–403, or a class 3 felony for sexual assault on a child as provided in section 18–3–405(2), or the crime of escape as provided in section 18–8–208, and, in the course of or in furtherance of the crime that he is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone.

■ As defendant concedes, a division of this court has rejected the argument that felony murder cannot be predicated upon an assault directed at the person who was killed. In *People v. Lewis,* 791 P.2d 1152, 1154 (Colo.App.1989), the division concluded that even though the crime of assault is not a discrete crime named in the felony murder statute, it nevertheless could sustain a count of felony murder by burglary. The division reasoned that:

[I]nasmuch as both murder and assault are crimes which may underlie a felony burglary, there is no logic or reason to preclude a felony murder charge from being based upon a burglary charge that, in turn, is premised upon either an intent to assault or an intent to murder.

We decline defendant's invitation to deviate from the conclusion reached by the division in *Lewis.*

### IV.

Defendant also contends that his conviction for first degree felony murder based on the predicate crime of second degree burglary must be vacated because there was insufficient evidence of burglary. We disagree.

■ When sufficiency of the evidence is the basis of an appeal of a jury verdict, we must determine whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988).

The prosecution must be given the benefit of every reasonable inference which might fairly be drawn from the evidence, and the determination of the credibility of witnesses and resolution of inconsistencies in the testimony is solely within the province of the fact finder. *Kogan v. People, supra.*

Second degree burglary occurs when a person "knowingly breaks an entrance into, or enters, or remains unlawfully in a building or occupied structure with intent to commit therein a crime against a person or property." Section 18–4–203, C.R.S. (1986 Repl.Vol. 8B). A person unlawfully enters or remains in or upon premises when he is not licensed, invited, or otherwise privileged to do so. *People v. Barefield,* 804 P.2d 1342 (Colo.App.1990). A person can be convicted of a burglary if previously granted permission to enter is withdrawn and the person enters or remains on the premises with the intent to commit a crime therein. *People v. Barefield, supra.*

Defendant argues that he could not be convicted of entering the trailer unlawfully because he was invited to enter. Although there was some evidence presented to support this contention, including defendant's testimony that he believed the victim stated, "Come in," other substantial evidence, viewed in the light most favorable to the prosecution, supports the reasonable conclusion that defendant assaulted the victim before the victim had an opportunity to invite him inside.

One of defendant's companions who was with him on the night of the killing testified as follows:

Q. When you got to the door, were all three of you going up to the trailer?

A. Yes, sir.

Q. What order were you in?

A. [The defendant], my brother, and then myself.

Q. And how long after Chuck [the victim] opened the door did [the defendant] hit him?

A. Instantly.

Q. Where was [the defendant] standing when he hit him the first time?

A. Right at the door. The door opened. [The defendant] grabbed it and hit him.

Q. Was [the defendant] inside yet?

A. I don't believe so.

Q. Then what happened after that?

A. He kept hitting him.

Q. Same place or did they move?

A. It was dark, you know. I couldn't really tell if he was hitting in the same place.

Q. Was [the defendant] standing in the same place?

A. No. He stepped in. After the first blow, he stepped into the trailer.

There was similar testimony by defendant's other companion who also was with the defendant at the victim's trailer when defendant gained entry into the trailer. This evidence supports the reasonable inference that the victim, although he opened the door in response to defendant's knock, did not have an opportunity to affirmatively invite defendant and his companions inside the trailer, and that, therefore, defendant entered the trailer without the victim's permission and was not licensed, invited, or otherwise privileged to enter.

The evidence also supports a conclusion by a reasonable person that, even if defendant and his companions had the victim's permission to enter the trailer, this permission was implicitly withdrawn once defendant began assaulting the victim and defendant thereafter remained in the trailer unlawfully with the concurrent intent to commit a crime. Defendant's companion testified that the victim obtained a club from under a table and hit defendant in the head with the club. Defendant also testified that the victim hit him on the head with a club, that he was knocked to the floor, and that there was blood running down his face from the blow.

Clearly, this evidence that the victim attempted to defend himself against defendant's attack supports an inference that the victim revoked any initial invitation he may have extended to defendant and that defendant unlawfully remained in the trailer with the concurrent intent to commit a crime.

*See Ray v. State,* 522 So.2d 963 (Fla.App. 1988) (victim's struggle with defendant sufficient evidence of withdrawal of victim's initial consent allowing defendant to remain on premises, thereby making defendant's remaining on the premises a burglary); *State v. Steffen,* 31 Ohio St.3d 111, 509 N.E.2d 383 (1987) (where act of violence is directed at person with ability and authority to revoke privilege of initial entry, strong inference arises that privilege to remain is terminated); *Hambrick v. State,* 174 Ga.App. 444, 330 S.E.2d 383 (1985) (when defendant's ulterior purpose went beyond bounds of friendly visit and victim reacted against it, reasonable inference could be drawn that authority to remain had ended).

We conclude that the evidence was sufficient to support defendant's conviction of second degree burglary as the predicate offense to felony murder.

## V.

■ Defendant contends that his conviction for accessory to first degree murder must be reversed on the basis that he also was convicted as the principal of the murder itself. We disagree because, based upon the record, defendant's conviction for accessory is predicated upon defendant's conduct in rendering assistance to his two companions in destroying and concealing evidence of the murder and not on defendant's conduct in causing the death of the victim.

The accessory to crime statute, § 18–8–105, C.R.S. (1986 Repl.Vol. 8B), provides in pertinent part:

A person is an accessory to crime if, with intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of another for the commission of a crime, he renders assistance to such person.

The statute lists several activities that connote rendering assistance, including concealing, destroying, or altering any physical evidence that might aid in the ultimate conviction of the perpetrator of the crime. Section 18–8–105(2)(e), C.R.S. (1986 Repl. Vol. 8B).

■ The complicity statute, § 18–1–603, C.R.S. (1986 Repl.Vol. 8B) provides:

A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he aids, abets, or advises the other person in planning or committing the offense.

Complicity is a theory by which a defendant becomes accountable for a criminal offense committed by another. *People v. Thompson,* 655 P.2d 416 (Colo.1982).

■ A defendant may be a complicitor to the crime of accessory by rendering assistance to another who is engaged in destroying evidence of a crime, even though the crime underlying the accessory charge may have been committed by the defendant.

In contrast to *People v. Broom,* 797 P.2d 754 (Colo.App.1990), in which the defendant's conviction as both accessory and principal was reversed because the defendant's single act could not support both a conviction as a complicitor and an accessory, the evidence in this case demonstrates that defendant's conviction for accessory was based on his conduct in rendering assistance to his companions' efforts to conceal or destroy evidence. One of defendant's companions testified that defendant told him to cut his hair because the victim had hair in his hand similar to the companion's. There was also evidence that, after the murder, one of the companions drove defendant to the apartment shared by the companions and that defendant then attempted to burn the club involved in the victim's beating in the fireplace with the companions' knowledge and acquiescence. The other companion testified that defendant told him not to talk to the police. Both of defendant's companions pleaded guilty to accessory to first degree murder.

The jury was informed by instruction that a person can be found guilty of a crime committed by another person when it is proven beyond a reasonable doubt that the crime was committed by another person, that the defendant had knowledge that the other person intended to commit the crime, and that the defendant intentionally aided, advised, or encouraged the other person in the

commission or planning of the crime—that is, the crime of accessory. The jury also was instructed that the elements of the crime of accessory to first degree murder are: that the defendant "rendered assistance to a person, with intent to hinder, delay, or prevent the discovery, detention, apprehension, prosecution, conviction, or punishment of such person, for the commission of a crime, knowing the person being assisted has committed the crime of Murder in the First Degree."

We conclude that there is an evidentiary basis to support defendant's conviction under these circumstances. We do not view the verdict as finding defendant guilty of being an accessory to his own crime but rather as his being an accessory, on the basis of complicity, to the conduct of his two companions in destroying evidence and hindering the due course of justice. Therefore, we affirm defendant's conviction for accessory to first degree murder.

### VI.

Finally, defendant contends that his consecutive thirty-two year sentence for first degree assault should merge with the life sentence for murder. We disagree.

▆▆▆ When a defendant is convicted of both felony murder and the predicate crime that supports it, the predicate felony merges into first degree murder. *Boulies v. People,* 770 P.2d 1274 (Colo.1989). The rule of merger also precludes a conviction for a crime that is the lesser included offense of another crime for which the defendant has also been convicted in the same prosecution. Section 18–1–408, C.R.S. (1986 Repl.Vol. 8B). An offense is "lesser included" for purposes of merging into a greater offense when proof of the essential elements of the greater offense necessarily establishes all of the elements required to prove the lesser offense. *People v. Chapman,* 192 Colo. 322, 557 P.2d 1211 (1977).

▆▆▆ Defendant would extend the rationale for the merger rule to encompass the ulterior crime of assault within the predicate crime of burglary. However, the burglary charge was based on defendant's unlawful entry into or unlawfully remaining in the trailer *with the intent to commit an assault or harassment.* Thus, proof of the essential elements of the burglary did not necessarily establish all of the elements of an assault committed subsequent to the crime of burglary. Those elements of assault included not only an intent to cause serious bodily injury to another person, but also the actual causing of serious bodily injury with a deadly weapon, and doing so while committing another crime, *i.e.,* burglary. *See People v. Rodriguez,* 914 P.2d 230 (Colo.1996) (rejecting argument that first degree murder, first degree sexual assault and second degree kidnapping all merge into first degree aggravated motor vehicle theft).

▆▆▆ Defendant alternatively argues that his sentence for assault should run concurrently with his life sentence for murder. We disagree. When a defendant is convicted of multiple offenses, the trial court has discretion to impose either concurrent or consecutive sentences. Concurrent sentences are required only when the charges are based on the same act or series of acts arising from the same criminal episode and the evidence supporting the charges is identical. *Qureshi v. District Court,* 727 P.2d 45 (Colo.1986).

Here, defendant testified that the victim was lying on the floor after being beaten with the club, and that he looked at the victim, picked up a knife in the kitchen, stepped toward the victim and cut his throat. One of defendant's companions who witnessed the assault and murder testified that after the victim was beaten, defendant said that he had to kill the victim.

Clearly, the assault count and the first degree murder count were supported by different evidence. *See Qureshi v. District Court, supra.* Hence, we perceive no error in the imposition of consecutive sentences for the multiple offenses.

The judgment and sentence are affirmed.

METZGER and RULAND, JJ., concur.