**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALEJANDRO LUJAN JIMENEZ,

     Petitioner,

v.

JEFFERSON B. SESSIONS, III, United
States Attorney General,

     Respondent.

Nos. 16-9555 & 17-9527

_____

**Petition for Review from the Board of Immigration Appeals**
_____

James S. Lamb (Catherine A. Chan, on the briefs), Chan Law Firm, Denver, Colorado, for Petitioner.

Jessica A. Dawgert, Senior Litigation Counsel (Chad A. Readler, Acting Assistant Attorney General, and Melissa Neiman-Kelting, Assistant Director, with her on the brief), U.S. Department of Justice, Office of Immigration Litigation, Washington, D.C., for Respondent.
_____

Before **BRISCOE**, **LUCERO**, and **BACHARACH**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

     Alejandro Lujan Jimenez petitions for review from a final order of removal

and an order by the Bureau of Immigration Appeals ("BIA") declining to sua sponte

reopen removal proceedings. We dismiss the latter petition for lack of jurisdiction. Exercising jurisdiction under 8 U.S.C. § 1252(a), we grant the former.

The BIA incorrectly determined that Lujan's[1] Colorado conviction for first degree criminal trespass, Colo. Rev. Stat. § 18-4-502, was a crime involving moral turpitude. Under the portion of the statute at issue, a defendant must have unlawfully entered a "motor vehicle with intent to commit a crime therein." Id. The BIA held that the crime intended is an element of the offense such that the statute is divisible on this basis. However, the Colorado Supreme Court has held an information charging only that a defendant intended to commit "a crime" contains "all essential elements of the crime of first degree criminal trespass." People v. Williams, 984 P.2d 56, 63 (Colo. 1999). And in numerous Colorado cases involving similar crimes, juries have been instructed as to alternative ulterior offenses. We conclude that the Colorado statute is not divisible as to the particular ulterior offense. A prior decision of this court stating otherwise, United States v. Venzor-Granillo, 668 F.3d 1224 (10th Cir. 2012), cannot be reconciled with the approach to divisibility set forth in Mathis v. United States, 136 S. Ct. 2243, 2249 (2016).

# I

Lujan is a native and citizen of Mexico. He first entered the United States as a child sometime in the 1990s. His most recent entry into the United States occurred in May 2004. In January 2007, Lujan pled guilty in Colorado state court to Criminal

---

[1] We refer to the petitioner as Lujan, consistent with the parties' briefing.

Trespass of a Motor Vehicle with the Intent to Commit a Crime Therein, in violation of Colo. Rev. Stat. § 18-4-502. He was sentenced to thirty-five days in jail.

On May 12, 2008, the Department of Homeland Security issued Lujan a Notice to Appear. It later filed an amended notice charging that he was removable under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. Lujan appeared in immigration court in September 2008 and received a continuance to hire an attorney. After retaining counsel, he obtained two additional continuances in November 2008 and February 2009. In April 2009, he conceded removability.

Lujan then applied for adjustment of status and cancellation of removal. He obtained four additional continuances of his removal proceedings. In August 2011, Lujan submitted documents in support of his applications for relief. His case was set for a final merits hearing in January 2014. However, on May 6, 2013, an Immigration Judge ("IJ") rescheduled the hearing for June 5, 2013. Lujan requested a continuance on May 13, which was denied. His counsel moved to withdraw on May 24.

Lujan appeared in immigration court on June 5, 2013, and the IJ granted counsel's motion to withdraw. Lujan stated that he was attempting to obtain new counsel, but proceeded pro se at the hearing. The IJ denied relief, concluding that Lujan was ineligible for adjustment of status based on his immigration history and that he was ineligible for cancellation of removal because he had been convicted of a crime involving moral turpitude—his criminal trespass offense in Colorado.

3

Lujan appealed to the BIA, arguing that the IJ's denial of a continuance violated his right to due process and that his Colorado conviction was not a crime involving moral turpitude. The BIA affirmed the IJ's ruling. Lujan then filed an untimely petition for review, which we dismissed. Lujan-Jimenez v. Holder, No. 14-9608 (10th Cir. Jan. 30, 2015) (unpublished). He also filed a motion requesting that the BIA reopen his removal proceedings or reissue its removal order, which the BIA denied. We granted his petition for review of that order, remanding to the BIA to explain its reasons for declining to reissue the removal order. Lujan-Jimenez v. Lynch, 643 F. App'x 737, 738 (10th Cir. 2016) (unpublished).

On remand, the BIA reissued Lujan's removal order. Lujan filed a petition for review of the reissued order. Several months later, he filed a request that the BIA sua sponte reopen his proceedings. The BIA declined to do so, and Lujan filed a second petition for review. We consolidated the two petitions.

## II

We first consider our jurisdiction over Lujan's petitions for review. See Margheim v. Buljko, 855 F.3d 1077, 1083 (10th Cir. 2017) ("As a federal court of limited jurisdiction, we have an independent obligation to confirm that our jurisdiction is proper."). In petition number 16-9555, Lujan seeks review of the BIA's final order of removal. We possess jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1). Lujan's petition was timely filed within thirty days of entry of the order. See § 1252(b)(1); Stone v. INS, 514 U.S. 386, 405 (1995) (petition for review deadline is jurisdictional). And Lujan seeks review of statutory

4

and constitutional questions rather than discretionary issues or other matters over which jurisdiction is barred by § 1252(a)(2).

However, we lack jurisdiction over petition number 17-9527. In that petition, Lujan seeks review of the BIA's decision declining to sua sponte reopen his removal proceedings. Our court has previously held that "we do not have jurisdiction to consider [a] petitioner's claim that the BIA should have sua sponte reopened the proceedings . . . because there are no standards by which to judge the agency's exercise of discretion." Infanzon v. Ashcroft, 386 F.3d 1359, 1361 (10th Cir. 2004). We accordingly review the merits only as to petition number 16-9555.

### III

We review the ruling of the BIA as the agency's final decision. Cruz-Funez v. Gonzales, 406 F.3d 1187, 1190 (10th Cir. 2005). However, "[w]e may consult the IJ's decision to give substance to the BIA's reasoning." Razkane v. Holder, 562 F.3d 1283, 1287 (10th Cir. 2009). In doing so, we review legal issues de novo and factual findings for substantial evidence. Elzour v. Ashcroft, 378 F.3d 1143, 1150 (10th Cir. 2004).

### A

Because Lujan conceded removability, he bears the burden of establishing eligibility for relief from removal. 8 U.S.C. § 1229a(c)(4)(A). An alien is ineligible for cancellation of removal if he has been previously convicted of a crime involving moral turpitude. 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(I). A prior conviction qualifies if it involves "conduct which is inherently base, vile, or depraved, contrary

5

to the accepted rules of morality." Efagene v. Holder, 642 F.3d 918, 921 (10th Cir. 2011).

In determining whether a prior conviction is for a crime involving moral turpitude, we generally apply the categorical approach. See Flores-Molina v. Sessions, 850 F.3d 1150, 1158 (10th Cir. 2017). Under that approach, "we must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed" within the definition. Moncrieffe v. Holder, 569 U.S. 184, 190-91 (2013) (quotation and alterations omitted). The actual facts of a prior crime are irrelevant. Id. at 190. If a state statute "sweeps more broadly" than the definition at issue, it does not qualify under the categorical approach. Descamps v. United States, 570 U.S. 254, 261 (2013).

If a statute is divisible, however, we employ the modified categorical approach. Id. Divisible statutes "list elements in the alternative, and thereby define multiple crimes." Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). Under the modified categorical approach, courts may look to a limited set of documents to determine which elements formed the basis of a prior conviction. Descamps, 570 U.S. at 262. We then apply the categorical approach to determine whether those alternative elements necessarily qualify as a crime involving moral turpitude. See id. at 263-64.

The Colorado statute at issue provides: "A person commits the crime of first degree criminal trespass if such person knowingly and unlawfully enters or remains

6

in a dwelling of another or if such person enters any motor vehicle with intent to commit a crime therein." Colo. Rev. Stat. § 18-4-502. The record shows that Lujan pled guilty to trespass of an automobile, but it does not indicate which crime he intended to commit. Under BIA precedent, this offense qualifies as a crime involving moral turpitude only if "the particular crime the alien intended to commit . . . involves moral turpitude." In the Matter of S-----, 6 I. & N. Dec. 769, 770 (BIA 1955).[2] Thus, the BIA ruled that "some of the criminal conduct defined by the statute may involve moral turpitude while other conduct may not."

Although the Colorado statute sweeps more broadly than the definition of a crime involving moral turpitude, the BIA concluded that it was subject to the modified categorical approach. Specifically, it determined that the particular crime a defendant intended to commit is an element of the offense. Because "it is the undocumented alien who bears the burden of proof, under the modified categorical approach, to show that his prior conviction was not a [crime involving moral turpitude]," Lucio-Rayos v. Sessions, 875 F.3d 573, 581 (10th Cir. 2017), the BIA held that the ambiguous record barred relief. Lujan's eligibility for cancellation of

---

[2] Lujan concedes that the BIA's interpretation of crime involving moral turpitude in this respect is reasonable. See Rangel-Perez v. Lynch, 816 F.3d 591, 597 (10th Cir. 2016) (BIA interpretations are due deference when issued in precedential decisions that bind the agency).

7

removal turns on whether the BIA correctly determined that the ulterior crime is an element of the Colorado offense.[3]

## B

The Supreme Court has cautioned that a statute is not divisible if it "merely specifies diverse means of satisfying a single element of a single crime." Mathis, 136 S. Ct. at 2249. "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." Id. at 2248 (quotations omitted). Means, in contrast, are "circumstances or events having no legal effect or consequence" because "they need neither be found by a jury nor admitted by a defendant." Id. (quotations and alterations omitted). If a statute lists alternative means, a jury need not agree on the particular means involved in order to convict. For example, if a statute required proof that a defendant used a deadly weapon, some jurors could find that he used a knife while others could find that he used a gun, and thus the statute would not be divisible. Id.

Our court previously concluded that the Colorado statute at issue is divisible. But as the government concedes, that case was decided under a now-overruled standard. We are generally bound by prior panel precedent. United States v. Brooks, 751 F.3d 1204, 1209 (10th Cir. 2014). "This rule does not apply, however, when the

---

[3] The parties agree that the statute is divisible as between offenses involving trespass to a dwelling and trespass to a motor vehicle. See People v. Rodriguez, 43 P.3d 641, 643 (Colo. App. 2001) (holding that the statute "is comprised of two entirely independent clauses" and "that the 'intent to commit a crime therein' language establishes an element of criminal trespass of a motor vehicle and not an element of criminal trespass of a dwelling"). We must determine whether the motor vehicle clause is further divisible.

Supreme Court issues an intervening decision that is contrary to or invalidates our previous analysis." Id. (quotation omitted).

In a prior opinion considering Colo. Rev. Stat. § 18-4-502, we held that the modified categorical approach can "be applied to determine what crime the defendant intended to commit when he entered the motor vehicle." United States v. Venzor-Granillo, 668 F.3d 1224, 1232 (10th Cir. 2012). However, we used an approach to divisibility under which courts could apply "the modified categorical approach when a defendant's statute of conviction contained alternative terms, regardless of whether those terms described different means of committing a single crime or different elements delineating separate crimes." United States v. Titties, 852 F.3d 1257, 1262 (10th Cir. 2017). The Supreme Court subsequently overruled that approach, holding "that the modified categorical approach is available only when a statute lists alternative elements." Id. at 1262-63 (citing Mathis, 136 S. Ct. at 2253).

In Venzor-Granillo, we rejected the argument that, after applying the modified categorical approach to determine the defendant "was convicted under the trespass to a motor vehicle part of the statute," the court "was required to abstain from further review of the judicial records underlying his prior conviction, disregard any additional facts those records revealed, and return to the pure categorical approach." 668 F.3d at 1228-29. Instead, we stated that the purpose of the modified categorical approach "is to enable the sentencing court to identify those facts that necessarily supported a prior conviction" and determine whether the conviction rested on "facts that would also satisfy the definition" at issue. Id. at 1229-30 (quotation omitted).

9

Rather than looking to the elements of the offense as defined by Mathis, see 136 S. Ct. at 2248, we stated that a conviction "necessarily rest[s]" on the facts urged "in light of the theory of the case." Venzor-Granillo, 668 F.3d at 1231 (quotation omitted).

This approach cannot be squared with Mathis. In that case, the Court explained that

> the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque. It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense.

Mathis, 136 S. Ct. at 2253-54 (citation omitted).

At some points, the Venzor-Granillo panel referred to elements. It stated that "Colorado law requires the ulterior offense to be charged and proved as an element of the statutory offense of first degree trespass." Venzor-Granillo, 668 F.3d at 1231 (citing Williams, 984 P.2d at 59, 65). However, our case law at the time "understood the Supreme Court's discussion of 'elements' in earlier cases to refer not to the traditional view of what an element is but rather to a broader meaning." Titties, 852 F.3d at 1269 n.12. In another case applying this now-abrogated approach, we explicitly stated that the Supreme Court's use of the term "element" with respect to the modified categorical approach included both "means and elements" regardless of whether "some jurors could have convicted under one of the statutory phrases while other jurors convicted under a different phrase." United States v. Trent, 767 F.3d

10

1046, 1060 (10th Cir. 2014), abrogated by Mathis, 136 S. Ct. at 2251 n.1. We conclude that the only fair reading of Venzor-Granillo is that it used the term elements in the same manner. In Mathis, however, "the Supreme Court embraced the traditional view of elements." Titties, 852 F.3d at 1269 n.12; see also Mathis, 136 S. Ct. at 2254 (rejecting argument that Court's prior use of "elements" was not intended to "distinguish between 'means' and 'elements,' but instead to refer to whatever the statute lists—whether means or elements" (quotation omitted)).

We hold that the portion of Venzor-Granillo analyzing whether Colo. Rev. Stat. § 18-4-502 is divisible as to the ulterior offense is no longer good law. As the Supreme Court clarified in Mathis, the modified categorical approach applies only if a statute lists alternative elements as in "the constituent parts of a crime's legal definition." 136 S. Ct. at 2248 (quotation omitted). Accordingly, we must consider whether the ulterior crime is an element of the Colorado statute under the Supreme Court's more recent standard.

## C

To determine whether a statute lists alternative elements or means, we may look to the statutory text, state court decisions, and the record of a prior conviction. Titties, 852 F.3d at 1268. A statute is divisible only if these sources allow us to conclude with "certainty" that a statute contains alternative elements. Id. (quotation omitted); see also United States v. Degeare, 884 F.3d 1241, 1248 (10th Cir. 2018) ("[U]nless we are certain that a statute's alternatives are elements rather than means, the statute isn't divisible and we must eschew the modified categorical approach.").

11

Colorado case law demonstrates that the intended crime is not an element, although we acknowledge the jurisprudence is somewhat mixed. In Williams, the Colorado Supreme Court considered whether an information charging criminal trespass without identifying the ulterior crime defendant intended to commit was fatally defective. 984 P.2d at 58. The information at issue merely alleged that the defendant unlawfully entered the motor vehicle of another "with the intent to commit a crime therein." Id. Nevertheless, the court concluded that "the information recited the statutory elements of the crime of criminal trespass." Id.; see also id. at 63 ("[T]he information set forth all essential elements of the crime of first degree criminal trespass."). It explained that an information "is substantively defective" if it "fails to charge an essential element of an offense." Id. at 60. But because the information contained all essential elements, it did "not warrant automatic reversal of Williams' conviction." Id. at 58.

The Colorado Supreme Court distinguished a defect in substance, which "requires dismissal of the charge or renders void any conviction entered on such charge," from a defect in form, which occurs if "the information pleads the statutory elements of the offense but the count lacks specificity." Id. at 63-64. As to a defect in form, Colorado courts consider whether the lack of specificity will prejudice the preparation of a defense and protect the defendant from double jeopardy. Id. at 65. Looking to the full record of the case, the court concluded that Williams was provided fair notice of the charge against him because the record "left no doubt as to

12

the allegations of time, place, and circumstance of the trespass and ulterior crimes of assault and attempted robbery." Id. at 65.

The Williams decision overruled a prior line of Colorado cases holding that an information charging burglary is substantively defective unless it identifies the particular ulterior crime alleged. Id. at 61-63 & n.9. Colorado's burglary statute, like its criminal trespass statute, requires the intent to commit an ulterior crime. Colo. Rev. Stat. § 18-4-202. Prior decisions held that "specific intent to commit a specific felony is an essential element of the offense of burglary." Garcia v. People, 483 P.2d 1347, 1349 (Colo. 1971). But those cases interpreted a prior version of the burglary statute that listed a number of particular ulterior crimes. Williams, 984 P.2d at 62. Similarly, the present version of the criminal trespass statute was amended from a prior version requiring the intent to commit theft. Id. The court held that

> the change in the criminal trespass and burglary statutes triggered a change in the required pleading of elements in the charging documents. Earlier versions of both statutes required a prosecutor to set forth the specific crime underlying the burglary charge or to specify that the defendant intended to commit theft. Subsequent amendments to the statutory language altered the specificity requirement.

Id.

Williams holds that a prosecutor does not need to charge a specific ulterior offense to sustain a trespass conviction. And the Supreme Court has referred to alternatives which "must be charged (and so are elements) and which need not be (and so are means)." Mathis, 136 S. Ct. at 2256. Nevertheless, we recently explained that such state court decisions are not necessarily dispositive. See United

13

States v. Hamilton, 889 F.3d 688, 693-94 (10th Cir. 2018). In Hamilton, we held that a state court opinion requiring that the place being burgled be included in a charging document did not demonstrate that the burglary location was an element because state law mandated that charging documents "allege not only the elements but also enough facts for a defendant to prepare for trial and to defend against double jeopardy." Id. at 693 (citing Ross v. State, 147 P.2d 797, 799 (Okla. Crim. App. 1944)).

The Williams decision does not share this problem. It clearly distinguished between defects in form, which concern whether a defendant "had adequate notice for purposes of trial preparation and whether he is protected from further prosecution for the same offense in a subsequent prosecution," Williams, 984 P.2d at 64, from defects in substance, which concern whether "the information set forth all essential elements of the crime," id. at 63. Because Williams analyzed those two issues separately, its discussion of elements cannot be mistaken for concerns regarding a charging document's specificity.

But Williams may not be dispositive for a different reason. As noted in our discussion of Venzor-Granillo, supra, courts prior to Mathis often used the term elements to refer generally to statutory alternatives. See Hamilton, 889 F.3d at 694. And Colorado courts have been inconsistent in their use of the term. Despite the holding in Williams that a conviction cannot stand if the charging document fails to allege "the essential elements of an offense," 984 P.2d at 63, other Colorado decisions state that "[t]here is no requirement, either constitutional or statutory, that every element of the offense be alleged in the information, although the several

14

elements (such as specific intent) must, of course, be proved on the trial," People v. Ingersoll, 506 P.2d 364, 365 (Colo. 1973) (emphases omitted); see also People v. Russell, 36 P.3d 92, 96 (Colo. App. 2001) ("It is not necessary that an information include every element of the offense that must be proved at trial.").

Further, the Williams opinion did not address whether a jury must be instructed as to a particular ulterior offense. We have looked to both charging language and jury instructions to determine whether statutory alternatives are means or elements. Degeare, 884 F.3d at 1254-57. After concluding that the defendant was not prejudiced by the defect in form, the Williams court expressly declined to consider the sufficiency of the jury instructions—which also failed to identify a particular ulterior crime—because that issue had been waived. 984 P.2d at 65. However, the court noted "'it is . . . necessary that the specific ulterior crime be clearly and accurately defined in order to determine if the defendant's intent was that proscribed by the burglary statute.'" Id. (quoting People v. Archuleta, 554 P.2d 307, 310 (Colo. 1976)).

We do not read this quotation to suggest that the jury must necessarily agree on a particular intended offense in order to convict. See Mathis, 136 S. Ct. at 2248 (statutory alternatives are not elements if the jury can convict without agreeing on the particular alternative). Instead, the court was noting that whatever ulterior offense or offenses are at issue should "be clearly and accurately defined," Williams, 984 P.2d at 65 (quotation omitted), so that the jury understands what is required to commit those ulterior offenses. Thus, if a prosecutor argues that a defendant intended to

15

commit theft, the elements of theft should be included in the jury instructions. See Archuleta, 554 P.2d at 310. But this rule would not bar a prosecutor from proceeding under alternative theories (for example, that a defendant intended to commit theft or arson); it would merely require that the elements of each alternative be provided. And if a jury may convict without agreeing on a particular ulterior offense, it cannot be an element. See Mathis, 136 S. Ct. at 2249; Degeare, 884 F.3d at 1252.

The Williams decision itself suggests that alternative instructions would be permissible. It found that Williams had not suffered prejudice because he "was sufficiently advised of the ulterior crimes the prosecution alleged he intended to commit upon the trespass," specifically, "assault and attempted robbery." Williams, 984 P.2d at 65 (emphases added). And in support of its statement regarding jury instructions, the court quoted a Kansas decision holding that "'the trial judge's failure to state the specific underlying felony or felonies and their elements prevented the jury from rendering a lawful verdict.'" Id. (quoting State v. Linn, 840 P.2d 1133, 1138 (Kan. 1992) (emphasis added)).[4]

We have not uncovered any Colorado decision directly deciding whether a jury must unanimously agree on one specific ulterior offense to convict under § 18-4-502.

---

[4] For the same reason, we are not persuaded that Colorado's pattern jury instructions shed much light on the question before us. The first degree trespass instruction includes a space for courts to insert the name of the ulterior offense, and a note cites Williams for the proposition that "a count charging first degree criminal trespass should allege the crime that the defendant intended to commit," CJI-Crim. § 4-5:03 & n.3. But the pattern instruction does not tell us whether a jury would have to reach a unanimous determination if multiple ulterior offenses are at issue.

16

However, two Colorado Court of Appeals opinions state in dicta that a jury must unanimously agree on the underlying crime to support a burglary conviction. People v. Villarreal, 131 P.3d 1119, 1128-29 (Colo. App. 2005); People v. Palmer, 87 P.3d 137, 140 (Colo. App. 2003). And as the Colorado Supreme Court explained in Williams, the burglary and trespass statutes contain parallel language. 984 P.2d at 62. In Palmer, the defendant argued that jury instructions were insufficient because they failed to identify a particular victim of the ulterior offense, felony menacing. 87 P.3d at 140. In the course of rejecting that argument, the court stated that "the jury must agree on the underlying felony defendant intended to commit." Id. at 140. In Villarreal, the court cited Palmer for that proposition, but held any error was harmless "because the jury unanimously found defendant guilty of two of the possible felonies underlying the burglary." 131 P.3d at 1128-29.

In neither case was the unanimity statement essential to the court's disposition. See Taylor v. Grogan, 900 P.2d 60, 64 (Colo. 1995) (defining dicta as statements made by a court "not integral to its resolution of the issues before it"). Our court has noted that dicta, "being peripheral, may not have received the full and careful consideration of the court that uttered it." OXY USA, Inc. v. Babbitt, 230 F.3d 1178, 1184 (10th Cir. 2000) (quotation omitted). Further, the unanimity question has been treated as unresolved in Colorado case law. In People v. Linares-Guzman, 195 P.3d 1130 (Colo. App. 2008), the court declined to reach the government's argument that "Villarreal and Palmer were wrongly decided." Id. at 1134. In that case, the jury was instructed that it could convict on a burglary charge if the defendant "entered the

17

home with the intent to commit either aggravated robbery or theft." Id. But as in Villarreal, any unanimity error would have been harmless because the jury convicted on a separate attempted aggravated robbery charge, indicating it unanimously agreed the defendant intended to commit aggravated robbery. Id. We thus conclude that Palmer and Villarreal are not the type of "state court decision[s] definitively answer[ing] the question" as called for in Mathis, 136 S. Ct. at 2256.

In addition to the foregoing cases, several other Colorado decisions reference jury instructions alleging alternative ulterior crimes for burglary. In People v. Barnhart, 638 P.2d 814 (Colo. App. 1981), the defendant was charged "with two underlying crimes: criminal mischief and theft," and the jury instructions referred to the underlying crimes in the disjunctive. Id. at 816. The defendant argued that the trial court erred by failing to instruct the jury on the elements of theft. Id. The Colorado Court of Appeals concluded any error was harmless because "[t]he elements of criminal mischief were correctly defined by the instructions, and the jury found defendant guilty of criminal mischief." Id. Similarly, in People v. Ager, 928 P.2d 784 (Colo. App. 1996), the jury was instructed that it could convict on a burglary charge if the defendant had the "intent to commit therein the crime of assault or harassment." Id. at 789. The court did not decide whether unanimity was required as to which crime was intended because the jury convicted on a separate sexual assault charge and therefore must have unanimously agreed on that ulterior offense. Id. Other Colorado cases note alternative instructions in passing. See People v. Richardson, 58 P.3d 1039, 1045 (Colo. App. 2002) (noting that "the jury

18

was instructed only on false imprisonment and third degree assault as underlying crimes for the burglary"); People v. Ramirez, 18 P.3d 822, 827 (Colo. App. 2000) (burglary instruction stated that defendant acted "with intent to commit therein the crimes of assault and menacing" (alteration omitted)).

We note the same pattern as to Colorado cases involving felony murder, which also requires proof of an ulterior offense. See People v. Bastin, 937 P.2d 761, 763 (Colo. App. 1996) (the jury was instructed that the defendant could be convicted of felony murder if death resulted "in the course of or in furtherance of First Degree Sexual Assault or Sexual Assault on a Child"); People v. Freeman, 668 P.2d 1371, 1382 (Colo. 1983) ("The jury was instructed on the elements of murder after deliberation and felony murder in which the underlying felony was robbery or attempted robbery."); see also People v. Beller, 411 P.3d 1145, 1148 (Colo. App. 2016) (noting that the "trial court's jury instructions identified aggravated robbery, attempted aggravated robbery, robbery, and attempted robbery as predicate offenses for the felony murder count"). In Doubleday v. People, 364 P.3d 193 (Colo. 2016), the Colorado Supreme Court referred to "the underlying offense" as "an essential element of felony murder." Id. at 194 n.1. But it has also stated that if a defendant is charged with multiple underlying offenses, "only one of these alleged felonies [i]s essential to support his conviction for felony murder." Callis v. People, 692 P.2d 1045, 1054 (Colo. 1984). And Colorado courts have crafted a special rule for double jeopardy issues involving felony murder convictions with multiple ulterior offenses: "that offense which serves as the primary predicate should merge into the felony

19

murder charge, and the judgments of conviction for the remaining offenses should exist independently of the felony murder conviction." People v. Arrington, 843 P.2d 62, 67 (Colo. App. 1992); see also People v. Huynh, 98 P.3d 907, 915 (Colo. App. 2004).

None of the foregoing appellate cases specifically holds that a jury may be instructed on multiple ulterior offenses, or that a jury can convict without unanimity as to the particular underlying crime. However, the number of cases referencing alternative theories indicates that such a practice occurs with some regularity in Colorado courts, notwithstanding the dicta contained in Villarreal, 131 P.3d at 1128-29, and Palmer, 87 P.3d at 140. In light of this practice, and the Colorado Supreme Court's holding in Williams that a conviction for first degree trespass may be sustained even if the charging document fails to allege a specific ulterior crime, 984 P.2d at 58, we conclude that Colorado's first-degree trespass statute is not divisible as to the ulterior offense. See Mathis, 136 S. Ct. at 2256. Decisions from Colorado's intermediate appellate court and decisions that pre-date Williams do not persuade us to deviate from its holding. Because we conclude that Colorado case law is dispositive of the issue, we need not address the remaining sources that may bear on the question. See Mathis, 136 S. Ct. at 2256 (if "a state court decision definitively answers the question," then "a sentencing judge need only follow what it says"); Hamilton, 889 F.3d at 692 ("Each source may definitively show whether the locational alternatives constitute elements or means.").

**D**

The BIA affirmed the IJ's conclusion that Lujan's conviction would qualify as a crime involving moral turpitude only if the ulterior offense so qualified. See In the Matter of S-----, 6 I. & N. Dec. 769 at 770. It explicitly acknowledged that the motor vehicle portion of Colo. Rev. § 18-4-502 was broader than the definition of a crime involving moral turpitude, but held that the statute was divisible as to the ulterior crime. Because we hold that this portion of the statute is not divisible as to the intended offense, Lujan's conviction does not qualify as a crime involving moral turpitude. See Afamasaga v. Sessions, 884 F.3d 1286, 1289 (10th Cir. 2018) (a state offense qualifies as a crime involving moral turpitude only if "the minimum conduct that would satisfy the" relevant portion of the statute "would necessarily also satisfy" the definition of a crime involving moral turpitude).[5]

**IV**

For the forgoing reasons, we **DISMISS** petition number 17-9527, **GRANT** petition number 16-9555, **VACATE** Lujan's order of removal, and **REMAND** to the BIA for further proceedings consistent with this opinion.

---

[5] Because we grant Lujan's petition on this basis, we do not reach his argument that the IJ violated his due process rights by denying a continuance.

21