**PUBLISH**

UNITED STATES COURT OF APPEALS

**Filed 2/20/96**

TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

CHRISTOPHER ALAN HENNING,

        Defendant - Appellant.

No. 95-3085

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 94-CR-40046)

_____

Charles D. Dedmon, Assistant Federal Public Defender, Topeka, Kansas (David J. Phillips, Federal Public Defender, and Marilyn M. Trubey, Branch Chief, Assistant Federal Public Defender, Topeka, Kansas, on the briefs), for Defendant-Appellant.

James H. Robinette, Assistant United States Attorney, Topeka, Kansas (Randall K. Rathbun, United States Attorney, and T.G. Luedke, Assistant United States Attorney, Topeka, Kansas, on the briefs), for Plaintiff-Appellee.

_____

Before ANDERSON, McKAY, and JONES,[*] Circuit Judges.

_____

McKAY, Circuit Judge.

_____

[*]Honorable Nathaniel R. Jones, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

Defendant Christopher Henning appeals the sentence he received after pleading guilty to being an accessory after the fact to premeditated murder. Mr. Henning argues that the district court should have granted him a three-point reduction in his base offense level pursuant to the United States Sentencing Guidelines § 3B1 because of his mitigating role in the offense. Mr. Henning also argues that the district court improperly used the guideline for first degree murder to determine his base offense level. He believes the district court should have used the guideline for second degree murder. For the reasons that follow, we affirm in part and remand in part.

The facts of the case are well summarized in Mr. Henning's brief:

During the late evening hours of March 10, 1994, or the early morning hours of March 11, 1994, the defendant, Christopher Henning, and three other people, Robert Grady, Michael Allingham and the victim, Michael Regehr, all met in a bar in Junction City, Kansas. Michael Regehr was celebrating his last night in the United States Army and was buying drinks for everyone all night, that he was pleased to be returning home to his family in Oregon.

At sometime after midnight, Robert Grady suggested that the group leave the bar. Grady and Regehr had been arguing sporadically during the course of the evening. Grady mentioned to both the defendant and Allingham that Regehr had lots of money on his person. The four entered Michael Allingham's car and departed.

After he pulled out, Allingham asked the others where they wished to go, and the victim stated he was tired and wished to return to his barracks. Allingham began to drive in that direction. Shortly thereafter, Robert Brady [sic] began dictating directions to Allingham from the passenger seat. Grady instructed Allingham to continue straight until they

got to Highway 57, and then Grady instructed Allingham to proceed on 57 until they reached Highway 77.

Then from 77 to Old Route 77 until finally he told Allingham to turn right onto Estes Road, bringing the group into an isolated section of Ft. Riley, Kansas. Along this route, Grady and the victim argued verbally, and Grady began to loudly repeat the phrase "I'm going to get him. I'm going to get him," as if speaking to himself. Approximately two hundred meters along Estes road, Grady told Allingham to stop the car, and he told the victim to get out of the car.

Shortly after the victim left the car, the defendant also exited the vehicle. Grady and the victim continued to argue verbally until Grady shoved the victim. The victim shoved Grady back, and a fist fight broke out between them. The defendant was right next to Grady and the victim, and at one point he pushed the victim back toward Grady.

After several punches exchanged, Grady knocked the victim to the ground. Grady then pulled out his knife and lowered himself onto the victim. The defendant attempted to get between Grady and Regehr; however, Grady pushed the defendant away. Grady then punched and stabbed the victim repeatedly with his right hand while strangling him with his left hand.

When Grady was done, he approached Allingham and attempted to hand him the knife. Allingham refused to take the knife. Grady then turned to the defendant, handed him the knife, and said, "Finish it." Pursuant to Grady's direction, the defendant took the knife, walked over to the victim, knelt down beside him and appeared to administer two to three blows with the knife. All of these events took place within the boundaries of Fort Riley military reservation.

Grady then told Allingham to bring the car to the body, which he did. At this time Grady and the defendant lifted the victim's body and attempted to put him in the hatch back of Allingham's car. They had trouble lifting him all the way and asked Allingham to help lift the body, which he did. Once the victim's body was in the car, Grady took over the driving. Allingham rode in the passenger's seat, and the defendant sat in the back seat. Allingham heard the victim moan three times in the car, and either Allingham or the defendant suggested that they take the victim to the

3

hospital. Grady responded by telling Allingham that he would handle this his way. He drove to a field near the water treatment plan on Fort Riley where Grady and the defendant exited the car and removed the victim from the hatch back area. They then dumped the victim's body in the field and returned to the car. . . .

Appellant's Br. at 3-6. Mr. Henning repeatedly denied any involvement with the murder before finally admitting that he took part in it. Then, at the court-martial of Robert Grady, Mr. Henning perjured himself and testified that he was not present when Mr. Regehr was murdered. Mr. Grady was convicted of premeditated murder under 10 U.S.C. § 918.

Subsequently, a grand jury indicted Mr. Henning for aiding and abetting murder, for being an accessory after the fact to murder, and for perjury. Mr. Henning pled guilty to the last two charges in exchange for the dismissal of the first charge. He now challenges the sentence given him for being an accessory after the fact to murder.

Mr. Henning first argues that he was entitled to a downward adjustment of three levels for his mitigating role as an accessory after the fact pursuant to U.S.S.G. § 3B1.2. Section 3B1.2 provides:

4

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

The district court refused to give Mr. Henning any reduction under § 3B1 because it found that he was an average participant in the crime rather than a minor or minimal participant. We will not overturn this factual finding unless it is clearly erroneous. United States v. Ballard, 16 F.3d 1110, 1114 (10th Cir.), cert. denied, 114 S. Ct. 2762 (1994). Based upon the facts of this case, we cannot say that the district court erred. Mr. Henning took the knife from Mr. Grady and thrust at the victim two or three times. He also aided Mr. Grady with the disposal of the victim's body. Additionally, Mr. Henning committed perjury at Mr. Grady's trial. These facts support the district court's finding.

Furthermore, U.S.S.G. § 2X3.1, which provides the base offense level for accessory after the fact, already takes into account the defendant's reduced role in the underlying offense. Therefore, "[t]he adjustment from § 3B1.2 (Mitigating Role) normally would not apply because an adjustment for reduced culpability is incorporated in the base offense level." U.S.S.G. § 2X3.1, Application Note 2. In other words, the guideline for accessory after the fact inherently recognizes that the defendant played a

5

lesser role in the underlying offense. A reduction in sentence for this mitigated role would simply be redundant. Although the district court may apply § 3B1.2 in abnormal cases, we cannot say that this is such a case.

Mr. Henning next argues that the district court improperly based his offense level on first degree murder. He claims that the guideline for second degree murder is more appropriate because he did not know the murder was premeditated. Mr. Henning raised this issue in his objections to the presentence report. R., vol. IV (Presentence Investigation Report, at ¶ 83, Defense Objection No. 3); R., vol. I, at No. 41 (Defendant's Memorandum of Objections to Presentence Investigation Report). Rather than addressing Mr. Henning's argument, the district court simply found that the presentence report correctly calculated Mr. Henning's sentence. R., vol. III, at 13; R., vol. IV (Presentence Investigation Report, court findings attachment). Federal Rule of Criminal Procedure 32(c)(1) provides:

> [T]he court . . . must rule on any unresolved objections to the presentence report. . . . For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.

In construing the former version of this rule, we previously held that the district court did not meet its burden by simply adopting the presentence report as its finding. United

States v. Pedraza, 27 F.3d 1515, 1530-31 (10th Cir.), cert. denied, 115 S. Ct. 347 (1994) (interpreting former Rule 32(c)(3)(D)). Thus, we remand to the district court so that it may enter an appropriate finding in this case.

On remand, the district court must determine which sentencing guideline applies to Mr. Henning. Sentencing Guideline § 2X3.1 requires the court to look to the "underlying offense" to determine the base offense level for accessory after the fact crimes. The underlying offense is defined as "the offense as to which the defendant is convicted of being an accessory." U.S.S.G. § 2X3.1, Application Note 1. Here, Mr. Henning was an accessory to a murder proscribed by 10 U.S.C. § 918. Unlike the Guidelines, § 918 does not distinguish between first and second degree murder. In fact, the Guidelines do not specifically cover § 918 crimes. Thus, the court should look to the most closely analogous guideline to determine the proper base offense level. U.S.S.G. § 2X5.1; see also U.S.S.G. § 1B1.2(a).

The two closest guidelines are § 2A1.1 for first degree murder and § 2A1.2 for second degree murder. Both guidelines are based in part on 18 U.S.C. § 1111. Section 1111 designates as first degree murder those murders which involve mental elements such as premeditation. It designates all other murders as second degree. Thus, in order to determine which guideline is appropriate, the district court will need to make a finding as

to the state of mind of Mr. Henning. The court should do this by examining the indictment, the plea agreement, and the facts of the case.

Specifically, the court must determine whether Mr. Henning knew that Mr. Grady acted with premeditation.[1] Mr. Henning cannot be punished as an accessory after the fact to first degree murder unless he had knowledge of the elements of a first degree murder. This result is required because a defendant must have knowledge of the underlying offense in order to be convicted as an accessory after the fact. United States v. Lepanto, 817 F.2d 1463, 1467 (10th Cir. 1987); 18 U.S.C. § 3; see, e.g., United States v. Burnette, 698 F.2d 1038, 1051-52 (9th Cir.) (reviewing evidence to determine whether the defendant had the requisite knowledge), cert. denied, 461 U.S. 936 (1983). But see United States v. Balano, 618 F.2d 624, 631-32 (10th Cir. 1979) (holding that the defendant's knowledge of the jurisdictional elements of the underlying offense is not necessary to support a conviction as an accessory after the fact), cert. denied, 449 U.S. 840 (1980).

Thus, if Mr. Henning knew that the murder was premeditated, he is an accessory after the fact to premeditated murder and the district court should apply Guideline

---

[1]The parties have limited their argument to the question whether Mr. Henning knew the murder was premeditated. They do not discuss any other mental element.

§ 2A1.1 for first degree murder in order to determine the base offense level.  If, however, Mr. Henning did not know that the murder was premeditated, the district court should apply § 2A1.2 for second degree murder.  We note that the presentence report improperly relied on Mr. Grady's conviction for premeditated murder to determine Mr. Henning's underlying offense.  Mr. Grady's conviction for premeditated murder does not compel the conclusion that Mr. Henning was an accessory after the fact to premeditated murder.

For the foregoing reasons, we AFFIRM in part and REMAND in part in order for the district court to make findings consistent with this opinion.