**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 25, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MIGUEL ANGEL GARCIA-
MORALES,

Petitioner,

v.

No. 17-9559

WILLIAM P. BARR,* United States
Attorney General,

Respondent.

## ORDER AND JUDGMENT**

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **PHILLIPS**, Circuit Judges.

Miguel Garcia-Morales petitions for review from an order of the Bureau of

Immigration Appeals ("BIA") affirming and adopting a decision by an immigration

judge ("IJ") to pretermit his application for cancellation of removal under section

240A(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b).

---

\*      Pursuant to Federal Rule of Appellate Procedure 43(c)(2), the current
Attorney General, William P. Barr, is automatically substituted for Jefferson B. Sessions,
III, who was the Attorney General when Mr. Garcia-Morales filed his petition for review.

\*\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate Procedure
32.1 and 10th Circuit Rule 32.1.

Mr. Garcia-Morales argues that, contrary to the BIA's conclusion, his accessory conviction under Idaho Code ("I.C.") § 18-205 is categorically not a crime involving moral turpitude ("CIMT"). We agree with him. Exercising jurisdiction under 8 U.S.C. § 1252(a), we **grant** the petition and **remand** the case to the BIA for further proceedings consistent with this order and judgment.

**I**

Mr. Garcia-Morales is a citizen and native of Mexico who entered the United States without inspection. After he pleaded guilty in 2015 to a count of Injury to Children under I.C. § 18-1501(1), the Department of Homeland Security ("DHS") served him with a Notice to Appear and charged him with two grounds of removability. The first ground was being present without admission or parole, pursuant to section 212(a)(6)(A)(i) of the INA, and the second ground was having been convicted of a CIMT, pursuant to section 212(a)(2)(A)(i)(I) of the INA.

At a March 2016 hearing, the IJ sustained the first removability ground—which Mr. Garcia-Morales had conceded—but not the second, finding that I.C. § 18-1501(1) "does not require sufficiently culpable mens rea" to qualify as a CIMT. A.R. at 74–75 (Hr'g Tr., dated Mar. 7, 2016). Mr. Garcia-Morales subsequently filed an application for cancellation of removal under section 240A(b) of the INA, 8 U.S.C. § 1229b(b).

2

In September 2016, an Idaho court granted Mr. Garcia-Morales's request for post-conviction relief based on ineffective assistance of counsel, allowing him to withdraw his guilty plea to a violation of I.C. § 18-1501(1) and instead plead guilty to an amended charge of Accessory to Felony in violation of I.C. § 18-205.

That statute states the following:

> All persons are accessories who, having knowledge that a felony has been committed:
>
> (1) Willfully withhold or conceal it from a peace officer, judge, magistrate, grand jury or trial jury; or
>
> (2) Harbor and protect a person who committed such felony or who has been charged with or convicted thereof.

I.C. § 18-205.

Mr. Garcia-Morales's amended criminal information did not identify the particular underlying felony as to which he was an accessory, stating only that he "did willfully withhold or conceal knowledge that a felony has been committed by another person and withheld that information from law enforcement." A.R. at 166 (Am. Information, filed Oct. 4, 2016). The other records related to this conviction similarly did not identify the underlying felony.

In February 2017, the IJ pretermitted Mr. Garcia-Morales's application for cancellation of removal, ruling that he had not met his burden, in accordance with 8 C.F.R. § 1240.8(d), to establish by a preponderance of the evidence that a

3

ground for mandatory denial—here, a CIMT conviction—did *not* apply.  Relying on *Matter of Rivens*, 25 I. & N. Dec. 623 (BIA 2011), the IJ stated that determining whether an accessory conviction is a CIMT requires examining the underlying felony: where the principal's act was a CIMT, so was the related accessory crime, *but* "where the principal's act was not a [CIMT], it follows that a person who harbored *or concealed* the principal would also not have committed a [CIMT]."  A.R. at 54–55 (IJ Order, dated Feb. 7, 2017) (emphasis added).

Applying this reasoning to Mr. Garcia-Morales's circumstances, the IJ concluded that it was not possible to determine whether his § 18-205 conviction was a CIMT because the underlying felony was unclear: Mr. Garcia-Morales's conviction-related documents did not mention the underlying felony, he had not submitted any other evidence of the underlying felony, and his Injury to Children conviction under § 18-1501(1) could not be deemed to be the underlying felony because that conviction had been vacated.  Given this uncertainty, the IJ concluded that Mr. Garcia-Morales did not meet his burden to show that a ground for mandatory denial of cancellation of removal did *not* apply.

More specifically, the IJ rejected Mr. Garcia-Morales's argument that § 18-205 is overbroad—effectively encompassing more than underlying felonies that are CIMTs—and that, consequently, the statute is categorically *not* a CIMT. *See*  A.R. at 108 (Resp. to Dep't's Mot. to Pretermit, filed Dec. 13, 2016) (arguing

4

that his conviction is not categorically a CIMT because § 18-205's general term, "a felony"—an element of the offense—is "broad and encompasses both conduct that involves moral turpitude and conduct that does not"). In response, the IJ indicated that the particular underlying felony is inherently an element of an accessory offense, stating that "[b]y its very nature, an accessory conviction requires analysis of the underlying crime." *Id.* at 56. Thus, the IJ concluded, "[the] underlying crime is subject to the categorical analysis." *Id.*

Mr. Garcia-Morales appealed from the IJ's decision to the BIA. Expressly relying on the Supreme Court's decision in *Mathis v. United States*, --- U.S. ----, 136 S. Ct. 2243 (2016), he stressed that the IJ's belief that "whether § 18-205(1) is a crime of moral turpitude turns on the 'underlying' crime" was erroneous. A.R. at 26 (Resp't's Br. on Appeal, filed July 20, 2017). That is because, he reasoned, "jury unanimity [is not required] as to which [underlying] felony was committed" under Idaho law. *Id.* Under this Idaho authority, he contended, all that § 18-205 requires is a defendant's knowledge that *a* felony (i.e., some felony) has been committed, which could very well include a non-CIMT felony. *See id.* Accordingly, Mr. Garcia-Morales urged the BIA to conclude that § 18-205 is categorically "overbroad" and that his conviction is "therefore not" a CIMT. *Id.*

The BIA, however, "adopt[ed] and affirm[ed] the decision of the [IJ]," concluding that Mr. Garcia-Morales did not meet his burden of showing that his

5

§ 18-205 conviction is not a CIMT. *Id.* at 3 (BIA Order, dated Nov. 20, 2017).

Without directly addressing Mr. Garcia-Morales's contention that the particular

underlying felony is not an element of the § 18-205 offense, the Board stated that

*Matter of Rivens* compels an IJ to "consider the turpitudeness of the underlying

offense" in order "to determine if the respondent's accessory crime is a [CIMT]."

*Id.* at 4.

Mr. Garcia-Morales now petitions for review of the BIA's decision. He

maintains that his § 18-205 conviction is not a CIMT because the statute both

sweeps more broadly than the definition of a CIMT and is indivisible.[1]

## II

"Although we usually lack jurisdiction to review BIA orders concerning

cancellation under § 1229b, *see* 8 U.S.C. § 1252(a)(2)(B)(i), we have jurisdiction

to review questions of law decided in those orders, *id.* § 1252(a)(2)(D) . . . ."

*Flores-Molina v. Sessions*, 850 F.3d 1150, 1157 (10th Cir. 2017) (citation

omitted). And, though "[w]e review the ruling of the BIA as the agency's final

decision," *Jimenez v. Sessions*, 893 F.3d 704, 709 (10th Cir. 2018), "[w]e may

---

[1]     Mr. Garcia-Morales makes additional arguments for relief. Among others, he contends that, even if § 18-205 is divisible, his conviction would still not qualify categorically as a CIMT because I.C. § 18-205 lacks the level of scienter needed for a CIMT. Because we agree with Mr. Garcia-Morales that I.C. § 18-205 is indivisible and not categorically a CIMT—and grant his petition for review on this basis—we need not reach Mr. Garcia-Morales's additional arguments.

consult the IJ's decision to give substance to the BIA's reasoning," *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009). "This is especially appropriate where the BIA incorporates by reference the IJ's rationale or repeats a condensed version of its reasons while also relying on the IJ's more complete discussion." *Id.* (quoting *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006)).

We review de novo the BIA's legal determinations in a denial of a motion for cancellation of removal, "although in appropriate circumstances we may defer to the BIA's interpretation of the immigration laws it implements." *Lucio-Rayos v. Sessions*, 875 F.3d 573, 576 (10th Cir. 2017), *cert. denied*, --- U.S. ----, 139 S. Ct. 865 (2019). But, to be clear, we "owe no deference to the BIA's interpretation of the substance of the state-law offense at issue." *De Leon v. Lynch*, 808 F.3d 1224, 1228 (10th Cir. 2015) (alterations omitted) (quoting *Efagene v. Holder*, 642 F.3d 918, 921 (10th Cir. 2011)).

### A

#### 1

As part of his burden to establish eligibility for cancellation of removal, *see* 8 U.S.C. § 1229a(c)(4)(A), Mr. Garcia-Morales must prove by a preponderance of the evidence that grounds for mandatory denial of relief do *not* apply, *see* 8 C.F.R. § 1240.8(d). One such ground is a prior conviction for a CIMT. *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(I). *If* his record is inconclusive as to whether

a prior conviction was for a CIMT, Mr. Garcia-Morales fails to meet his burden. *See Lucio-Rayos*, 875 F.3d at 583–84.

A prior conviction qualifies as a CIMT if it involves "conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed between man and man, either one's fellow man or society in general." *Veloz-Luvevano v. Lynch*, 799 F.3d 1308, 1312–13 (10th Cir. 2015) (quoting *Wittgenstein v. INS*, 124 F.3d 1244, 1246 (10th Cir. 1997)). To make the CIMT determination, we apply the categorical approach and, where appropriate, the modified categorical approach. *See Flores-Molina*, 850 F.3d at 1158 & n.3; *see also Matter of Mendez*, 27 I. & N. Dec. 219, 221 (BIA 2018) ("We have held that the categorical and modified categorical approaches provide the proper framework for determining whether a conviction is for a [CIMT].").

Under the categorical approach, "we look only to the elements that must be proven to convict a person under [the statute] in the abstract, 'and *not* to the particular facts underlying'" the conviction. *United States v. Mann*, 899 F.3d 898, 901–02 (10th Cir. 2018) (quoting *United States v. Pam*, 867 F.3d 1191, 1203 (10th Cir. 2017), *cert. denied*, --- U.S. ----, 139 S. Ct. 2637 (2019)). Moreover, "we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized" by the elements of the crime, "and then determine whether even those acts are encompassed" within the definition of a CIMT.

8

*Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (alterations in original) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)). If the elements of the crime that the defendant was convicted of categorically "sweep[] more broadly," *Descamps v. United States*, 570 U.S. 254, 261 (2013), than the definition of a CIMT—that is, if the elements of the offense criminalize conduct that would *not* qualify as a CIMT—then, the offense is not a CIMT, *see Jimenez*, 893 F.3d at 709; *see also Afamasaga v. Sessions*, 884 F.3d 1286, 1289 (10th Cir. 2018) (noting that petitioner's "offense was a CIMT only if *all* conduct prohibited by [the elements of his conviction] involves moral turpitude" (emphasis added)).

Some statutes do not have a single, indivisible set of elements; instead, they have a divisible structure containing "elements in the alternative, and thereby define multiple crimes." *Mathis*, 136 S. Ct. at 2249. When applying the categorical approach to a divisible statute, courts typically invoke the modified categorical approach—which involves looking at "a limited class of documents" from the prior conviction—"to determine what crime, with what [set of] elements, a defendant was convicted of." *Id.* The court then applies "the categorical approach to determine whether those alternative elements necessarily qualify as a [CIMT]." *Jimenez*, 893 F.3d at 709; *see also United States v. Titties*, 852 F.3d 1257, 1267 (10th Cir. 2017) ("[T]he modified [categorical] approach merely helps

implement the categorical approach when a defendant was convicted of violating a divisible statute." (quoting *Descamps*, 570 U.S. at 263)).

But resort to the modified categorical "approach is permissible *only* if the statute of conviction is divisible." *United States v. Hamilton*, 889 F.3d 688, 692 (10th Cir. 2018) (emphasis added); *Titties*, 852 F.3d at 1267 ("'The modified approach . . . has no role to play' when the statute of conviction is indivisible—i.e., when it lacks alternative elements." (omission in original) (quoting *Descamps*, 570 U.S. at 264)); *see also United States v. Degeare*, 884 F.3d 1241, 1246 (10th Cir. 2018) ("This pure categorical approach applies to statutes that aren't divisible, i.e., those that contain 'a single, indivisible set of elements.' But if the statute in question is divisible, i.e., if it 'contains more than one crime,' then we instead apply the modified categorical approach." (citation omitted) (quoting *Descamps*, 570 U.S. at 258; then *Titties*, 852 F.3d at 1265)).

**2**

Under BIA precedent, an accessory conviction is a CIMT if, and only if, the underlying felony is a CIMT. *See Matter of Rivens*, 25 I. & N. Dec. at 628 (justifying this approach on the grounds that "helping a base criminal escape justice is more reflective of a breach of duty owed to society than when the principal has committed an offense that is not itself base or vile"). Mr. Garcia-Morales's statute of conviction, however, does not identify a particular underlying

felony. *See* I.C. § 18-205 ("All persons are accessories who, having knowledge that *a felony* has been committed: (1) [w]illfully withhold or conceal it from a peace officer . . . ." (emphasis added)).

However, the IJ effectively assumed that I.C. § 18-205's general term, "a felony," was divisible as to the underlying felony, asserting that "the underlying [felony]" of Mr. Garcia-Morales's conviction is "subject to the categorical analysis," given "[the] very nature" of accessory convictions. A.R. at 55–56. Accordingly, the IJ performed a modified-categorical analysis, examining "the accessory conviction documents," in an effort "to determine what the underlying felony was," and determined that those documents were "inconclusive" on that subject. *Id.* at 55. Thus, it found that Mr. Garcia-Morales had failed to carry his burden of proof to establish that his accessory offense was *not* a CMIT.

The BIA followed the IJ's lead, expressly "adopt[ing] and affirm[ing]" the IJ' decision. *Id.* at 3. It reasoned that § 18-205 "requires that the person convicted of the [accessory] crime had knowledge of the underlying felony," and "it is the turpitudeness of this underlying felony that determines whether or not an individual convicted of an accessory crime is removable for having committed a crime involving moral turpitude." *Id.* at 4. It concluded that Mr. Garcia-Morales had not carried his burden of proof to show that he had *not* been convicted of a CIMT; in particular, he had "presented no evidence concerning the nature of the

11

crime underlying his accessory conviction." *Id.* at 5. Therefore, the BIA denied Mr. Garcia-Morales relief from removal.

**3**

Contrary to the BIA's reasoning, however, the divisibility inquiry is "an essential step" that ordinarily must not be assumed away because it determines whether recourse to the modified categorical approach is permissible at all. *Titties*, 852 F.3d at 1267; *see, e.g.*, *Hamilton*, 889 F.3d at 692 (holding that the modified categorical "approach is permissible *only* if the statute of conviction is divisible" (emphasis added)); *Degeare*, 884 F.3d at 1246 (noting that we "apply the modified categorical approach" when the statute is divisible). Specifically, as relevant here, I.C. § 18-205 is divisible if the general statutory term, "a felony," is divisible as to the underlying felony. If so, the statute consists of multiple, distinct accessory crimes that are predicated on different underlying felonies. In other words, the particular underlying felonies would be alternative, "statutory options [that] constitute *elements* [of distinct accessory offenses] rather than *means*" to satisfy the statute's element that *a felony* has been committed. *Hamilton*, 889 F.3d at 692 (emphasis added); *see Mathis*, 136 S. Ct. at 2249 (comparing and contrasting "[a] single statute [that] may list elements in the alternative, and thereby define multiple crimes," with "one that enumerates various factual means of committing a single element").

12

If § 18-205 is divisible as to the underlying felony, it would be appropriate to use the modified categorical approach to attempt to determine the identity of the underlying felony that formed the basis of Mr. Garcia-Morales's conviction. *See, e.g.*, *Degeare*, 884 F.3d at 1246. And, if the modified categorical approach revealed the identity of the underlying felony, we would then "apply the categorical approach . . . by comparing the elements" of Mr. Garcia-Morales's § 18-205 offense—including the elements of the particular underlying felony—to the elements of a CIMT, in order to discern whether his § 18-205 offense is a CIMT. *Titties*, 852 F.3d at 1265; *see Mathis*, 136 S. Ct. at 2254 n.4 (noting that "the categorical approach's basic method" involves "comparing those elements [of the offense at issue] with the generic offenses's" elements). Notably, if § 18-205 is divisible as to the underlying felony—such that the *particular* felony constitutes an element of the offense—the prosecution would be obliged to prove, or the defendant would be required to admit when entering a plea, that the *particular* felony had been committed, not just that *some* felony had been committed. *See Mathis*, 136 S. Ct. at 2248–49 (noting that "'[e]lements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction[]' . . . . and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty," whereas "means" are "various factual ways of committing some component of the offense" and therefore "a jury need not find

13

(or a defendant admit) any particular" means (quoting *Elements of Crime*, BLACK'S LAW DICTIONARY (10th ed. 2014)); *accord Titties*, 852 F.3d at 1267.

On the other hand, if I.C. § 18-205 is indivisible as to the underlying felony, that would mean that the statute "lacks alternative elements"—more specifically, that the general statutory term "a felony" would not effectively embody alternative, particular felonies as elements that form separate accessory offenses. *Titties*, 852 F.3d at 1267. As applied here, the indivisibility of § 18-205 as to the underlying felony would mean that the elements of Mr. Garcia-Morales's conviction would categorically "sweep[] more broadly," *Descamps*, 570 U.S. at 261, than the definition of a CIMT because, as the BIA itself acknowledges, some underlying felonies would not constitute a CIMT, and, consequently, the accessory crimes related to those offenses also would not qualify as CIMTs, *see Jimenez*, 893 F.3d at 716 (holding that a conviction under the Colorado first-degree criminal trespass statute is not categorically a CIMT because the statute is indivisible as to the particular "ulterior offense" (i.e., underlying crime) and the BIA had acknowledged that a conviction under the statute could only qualify as a CIMT if the ulterior offense was a CIMT).

The resolution of this case thus hinges on whether I.C. § 18-205 is divisible as to the underlying felony. And the answer to that question turns on whether the particular underlying felony is an element of the offense or merely a factual means

14

of satisfying the statutory requirement that "a felony" has been committed. *See, e.g.*, *Hamilton*, 889 F.3d at 692; *Degeare*, 884 F.3d at 1247; *Titties*, 852 F.3d at 1267. We apply the *Mathis* divisibility framework to inquire into this matter.[2] *See, e.g.*, *Degeare*, 884 F.3d at 1247.

## B

### 1

Under *Mathis*, we employ three "tools" in conducting the elements-means inquiry—an inquiry upon which the critical divisibility determination turns: (1) state-court opinions (as well as court-approved pattern jury instructions), (2) the

---

[2] Though neither the IJ nor the BIA performed a *Mathis* divisibility analysis, we perform that analysis now without first remanding to the BIA because *Mathis* was controlling law at the time of the IJ and BIA proceedings, and Mr. Garcia-Morales presented the IJ—and, perhaps more importantly, the final agency adjudicator, the BIA—with a fair opportunity to apply *Mathis*'s rubric to his case. Indeed, in his briefing to the BIA, Mr. Garcia-Morales's reliance on *Mathis* was pellucid. *See* A.R. at 108–09 (arguing to the IJ that a "felony," as listed in I.C. § 18-205, is "broad and encompasses both conduct that involves moral turpitude and conduct that does not"); *id.* at 24–26 (revealing Mr. Garcia-Morales's express reliance on *Mathis* when arguing to the BIA that a conviction under I.C. § 18-205 is not categorically a CIMT in part because under Idaho caselaw "jury unanimity [is not required] as to which [underlying] felony was committed"); *id.* at 10 (showing the government's understanding in its brief to the BIA that Mr. Garcia-Morales "argues that his crime, Accessory to a Felony under 18-205(1) is categorically not a crime involving moral turpitude under *Mathis*"); *cf. Zu-Chen Horng v. Lynch*, 658 F. App'x 415, 417–18 (10th Cir. 2016) (unpublished) (remanding for the BIA to perform a *Mathis* divisibility analysis where the BIA did not initially have a proper opportunity to perform a *Mathis* analysis since, even though the petitioner had argued that his statute of conviction was overbroad and indivisible, *Mathis* was issued *after* the BIA had released its decision).

15

statutory text, and (3) the record of conviction.[3] *Titties*, 852 F.3d at 1269–71 (applying "the three tools the Supreme Court identified in *Mathis*"); *see Degeare*, 884 F.3d at 1247–48 (noting that "[i]n deciding whether a state statute's alternatives are elements or means, we have several tools at our disposal," then describing the *Mathis* tools). Specifically, we may use these tools to decide whether the potential "statutory options" (i.e., alternatives)—here, the particular underlying felonies—are elements that form the basis for different crimes under the statute or just diverse factual means of satisfying "a single element of a single crime [i.e., the element of 'a felony']." *Mathis*, 136 S. Ct. at 2249, 2256; *accord Hamilton*, 889 F.3d at 692; *United States v. Abeyta*, 877 F.3d 935, 941 (10th Cir. 2017). "Each source [i.e., tool] may definitively show whether the [statutory] alternatives constitute elements or means." *Hamilton*, 889 F.3d at 692. However, if we ultimately employ all three tools and are still uncertain whether "a statute's alternatives are elements rather than means, the statute isn't divisible and we must eschew the modified categorical approach." *Degeare*, 884 F.3d at 1248; *accord Hamilton*, 889 F.3d at 692. Put another way, "[a] statute is divisible only if these

---

[3] While Idaho courts have indicated strongly that I.C. § 18-205 is divisible as to its two subsections, *see, e.g.*, *State v. Teasley*, 58 P.3d 97, 100 (Idaho Ct. App. 2002) (describing how I.C. § 18-205 "defines two types of accessories"—(1) withholding or concealing a felony from law enforcement, and (2) harboring or protecting a person charged with, or convicted of, a felony), this divisibility is not germane to our analysis. For our purposes, the relevant divisibility question is whether I.C. § 18-205 is divisible as to the underlying felony.

16

sources [i.e., the *Mathis* tools] allow us to conclude with 'certainty' that [the] statute contains alternative elements." *Jimenez*, 893 F.3d at 712 (quoting *Titties*, 852 F.3d at 1268). We must be "*at least* more certain than not that a statute's alternatives constitute elements" rather than means. *Degeare*, 884 F.3d at 1248 n.1.[4] However, the elements-means determination will be "easy" in "many" cases, with "indeterminacy . . . more the exception than the rule." *Mathis*, 136 S. Ct. at 2256–57.

This is one such easy case: we conclude that I.C. § 18-205 is indivisible as to the underlying felony. More specifically, we cannot reach the necessary threshold of certainty that the particular underlying felonies that § 18-205's general term, "a felony," effectively embodies are elements, rather than means.[5]

---

[4] According to *Mathis*, this certainty requirement stems from the "demand for certainty" imposed by the Court's seminal, categorical-approach case, *Taylor v. United States*, 495 U.S. 575 (1990). *Mathis*, 136 S. Ct. at 2257 (quoting *Shepard v. United States*, 544 U.S. 13, 21 (2005)). As in *Degeare*, we have no need to determine here, as a matter of first impression, "what quantum of certainty *Taylor* requires," because we would be hard pressed to be "more certain than not that [§ 18-205's] alternatives [i.e., particular felony offenses] constitute elements," rather than means. *Degeare*, 884 F.3d at 1248 n.1. And *Taylor* requires "at least" that much certainty. *Id.* (emphasis omitted).

[5] At least arguably, the general statutory term "a felony" in I.C. § 18-205 is a species of "single umbrella term," as that term is used in *Mathis*. 136 S. Ct. at 2257. Typically, "[a]n 'umbrella term' is a broad term, like 'premises,' that encompasses the other terms in a series." *Hamilton*, 889 F.3d at 696. When used "in the charging document or [case-specific] instructions" (as well as perhaps in the statute itself or in court-approved pattern instructions), an umbrella term "can reveal that the specific [statutory] alternatives are means of satisfying a single element [i.e., the umbrella term

(continued...)

17

Indeed, our application of *Mathis*'s tools strongly suggests, if not clearly

establishes, that the particular felonies are merely means under the statute.

---

[5](...continued)
itself]." *Titties*, 852 F.3d at 1268 n.11; *see Hamilton*, 889 F.3d at 696 ("The use of an umbrella term could indicate that the [statutory] alternatives constitute means rather than elements."); *see also Hamilton*, 889 F.3d at 700 & n.1 (Briscoe, J., concurring) (using *Mathis*'s guidance concerning an umbrella term in analyzing the elements-means import of the statutory text at issue, and observing that *Mathis* discussed the umbrella term in applying the tool of peeking at conviction-related records but the Court "left it unclear whether umbrella term analysis was limited to merely that part of the divisibility analysis," and concluding that "it is not so limited"). Unlike the situation in *Mathis*, however, there is no express list of statutory alternatives in I.C. § 18-205. *See Mathis*, 136 S. Ct. at 2250 (noting that the Iowa statute "reaches a broader range of places: 'any building, structure, *[or] land, water, or air vehicle*.'" (alteration in original) (quoting Iowa Code § 702.12 (2013))); *see also Titties*, 852 F.3d at 1277–78, (Phillips, J., dissenting) (detailing *Mathis*'s list of statutory alternatives tied to the umbrella term "occupied structure"). In contrast, the statutory alternatives at issue here—i.e., the particular underlying felonies—are *effectively* embodied in § 18-205's general statutory term "a felony." As we aptly described such underlying offenses in an analogous case, *Jimenez*, the offenses are "ulterior crimes," 893 F.3d at 712, in the sense that they are not expressly "apparent" but rather are "latent," *Ulterior*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002). Ultimately, we decline to definitively opine on whether I.C. § 18-205's general term, "a felony," should be deemed a "single umbrella term" under *Mathis*'s rubric, nor relatedly do we accord the use of this term in certain contexts *special* significance under the premise that it is an umbrella term within the meaning of *Mathis*. The parties do not assert that the "a felony" component of § 18-205 is an umbrella term under *Mathis*, and "*Mathis* says this [umbrella-term analysis] is just one of several ways the means/elements inquiry might be settled." *Titties*, 852 F.3d at 1268 n.11. We are content to follow the lead of our analogous decision, *Jimenez*, where we conducted a *Mathis* divisibility analysis aimed at determining whether the petitioner's offense was a CIMT—and, more specifically, whether the statute at issue, which used the general statutory language "a crime therein," was divisible as to the "ulterior" crimes effectively embodied in this language —*without* invoking the "umbrella term" concept of *Mathis*. *Jimenez*, 893 F.3d at 707.

18

Consequently, I.C. § 18-205 "isn't divisible [as to the underlying felony]." *Degeare*, 884 F.3d at 1248.

As applied here, this means that the particular felony as to which Mr. Garcia-Morales was an accessory is not an element of his conviction. And, under the applicable categorical approach, his statute of conviction, I.C. § 18-205, "sweeps more broadly," *Descamps*, 570 U.S. at 261, than the definition of a CIMT, because it encompasses some underlying felonies that are *not* CIMTs. The upshot is that Mr. Garcia-Morales has satisfied his burden to establish that I.C. § 18-205 is categorically *not* a CIMT, and the BIA erred in concluding to the contrary.

**2**

We start our analysis by considering Idaho state-court decisions. When "state-court decisions . . . answer the question[,] . . . . 'a sentencing judge need only follow what [they] say[].'" *Titties*, 852 F.3d at 1268 (quoting *Mathis*, 136 S. Ct. at 2256); *see also Mathis*, 136 S. Ct. at 2256 (noting that when "a state court decision *definitively* answers the question," then "a sentencing judge need only follow what it says" (emphasis added)).

The Supreme Court of Idaho appears to have indicated, in effect, that I.C. § 18-205 is indivisible as to the underlying felony—*viz.*, the general statutory term "a felony" is indivisible. In *State v. Lampien*, 223 P.3d 750 (Idaho 2009), that

19

court reviewed the sufficiency of an I.C. § 18-205 charging document (i.e., a criminal information), which, in relevant part, stated the following:

> MELANIE ANN LAMPIEN is accused by this information of the crime of HARBORING A WANTED FELON, Idaho Code § 18-205, a felony, committed as follows, to-wit: That the said MELANIE ANN LAMPIEN . . . did with knowledge that NICHOLAS VERL McKENNA was charged with a felony probation violation, . . . did conceal, harbor and protect NICHOLAS VERL McKENNA . . . .

*Id.* at 754. After pleading guilty, the defendant, Ms. Lampien, appealed her conviction, arguing that the trial court had lacked jurisdiction. Specifically, she contended that the facts in the charging document did not amount to a violation of I.C. § 18-205 because they only mentioned that the principal was charged with a "felony probation violation," which itself is not a felony. *Id.*

After mentioning that the charging document had to "state facts essential to establish" an I.C. § 18-205 offense, the court upheld the conviction, explaining that "so long as the charging document . . . g[ave] notice to Lampien that she was harboring an individual who had been convicted of *a felony*, the district court had jurisdiction over her case." *Id.* at 755 (emphasis added). The court made note of the circumstances surrounding Ms. Lampien's guilty plea: in entering her plea, she had admitted to knowing that the criminal principal (to whom she was an accessory) had previously been convicted of two felonies. *Id.* As the court reasoned, this fact showed that the use of "felony probation violation" in the

20

charging document gave an adequate level of notice to Ms. Lampien that her actions would have the effect of harboring and protecting an individual who had been convicted of *a felony*. *See id.*

Thus, the court reasoned, the charging instrument "conform[ed] to the language of [I.C. §] 18-205" and "properly charged an offense" under that statute. *Id.* at 755–56. Moreover, the court bolstered its reasoning by pointing out that, definitionally, any person wanted for a felony probation violation "will necessarily have been" charged with *an* underlying felony at some point. *Id.* at 756.

*Lampien*'s analysis indicates that an I.C. § 18-205 charging document may permissibly fail to identify the defendant's particular underlying felony. Indeed, the charging document in *Lampien* did not even expressly use the statute's general term, "a felony" (though it referred to "a felony probation violation"). As the court reasoned, the charging document simply had to put the defendant on notice that she was alleged to have been an accomplice to the commission of *a* (i.e., some) felony, seemingly without any regard for the particular identity of that felony.

Tellingly, if the particular underlying felony had been an element of the offense, the *Lampien* court likely would have insisted on it being included in the charging document that the defendant had to accept as part of her guilty plea. *See Mathis*, 136 S. Ct. at 2248 (noting that, "at a plea hearing, the[] [elements] are

21

what the defendant necessarily admits when he pleads guilty"); *accord Titties*, 852

F.3d at 1267; *see also* I.C. § 19-1409 (noting that an "indictment must contain

. . . . [a] statement of the acts constituting the offense in ordinary and concise

language"); I.C. § 19-1304 ("The provisions of this code in relation to indictments,

and all other provisions of law applying to prosecutions upon indictments . . . shall

in the same manner and to the same extent, as near as may be, apply to

informations and all prosecutions and proceedings thereon.").[6]  Thus, under

*Lampien*'s reasoning, if a document charging an offense under I.C. § 18-205 were

to identify the particular underlying felony that the defendant was an accessory to,

---

[6]  Notably, the *Lampien* court's reference to the defendant's knowledge of the prior commission of *two* felonies arguably suggests that a single accessory charge under I.C. § 18-205 may be predicated on a defendant's knowledge of the prior commission of more than one felony.  *See Lampien*, 223 P.3d at 755.  However, if particular underlying felonies were elements of § 18-205, they would be the basis for separate and distinct accessory crimes that ordinarily would not be alleged in a single accessory charge.  *See Hamilton*, 889 F.3d at 692 ("A statute comprises 'multiple, alternative versions of the crime' if the statutory options constitute elements rather than means." (quoting *Mathis*, 136 S. Ct. at 2248–49)).  *Compare* I.C. § 19-1432 (noting that, given certain similarities or factual connections, "[t]wo (2) or more offenses may be charged in the same indictment or information *in a separate count for each offense*" (emphasis added)), *and State v. Major*, 725 P.2d at 115, 118 (Idaho 1986) (noting that if the defendant "was charged with two offenses under the same count, a pleading defect referred to as 'duplicity'" occurred (quoting WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 19.2(e) (4th ed. 1984))), *with State v. Bishop*, 405 P.2d 970, 977 (Idaho 1965) ("We have repeatedly held that when a statute defining a crime provides that the crime may be committed by several means or by several acts, any or all of such means or acts may be charged in the conjunctive, and that such a charge is not duplicitous, and charges but one offense . . . ." (collecting cases)).  This point bolsters the idea that these underlying crimes are not elements at all, but rather merely means of satisfying the single, general element—"a felony."

22

it would be doing more than Idaho law actually requires. *Cf. Hamilton*, 889 F.3d at 703 (Briscoe, J., concurring) ("[O]ur inquiry into state sources of law is not an inquiry to determine the charging practices of Oklahoma prosecutors. Rather, we are asked to decide the legal question of whether the statutory alternatives contained in § 1435 are elements or means."). More specifically, the document would simply be specifying the means that the principal used to commit the requisite felony. Those means, however, would be "legally extraneous circumstances" that would be unnecessary to establish a defendant's guilt of the charged offense. *Descamps*, 570 U.S. at 270; *accord Mathis*, 136 S. Ct. 2249.

Moreover, the Idaho Court of Appeals's analysis in *Teasley*, 58 P.3d at 97, anticipated the guidance that the Idaho Supreme Court subsequently would provide in *Lampien* concerning the means status of the particular felony under § 18-205. There, the court examined the propriety of a jury instruction issued for an alleged violation of I.C. § 18-205. The instruction was as follows:

> The elements of the crime of HARBORING A WANTED FELON with which the Defendant PATRICIA MARIE TEASLEY, is charged, are:
> — That on August 31, 2000
> — In Boundary County, State of Idaho,
> — the Defendant PATRICIA MARIE TEASLEY,
> — with knowledge that Dale Delmont Reed was charged with, or convicted of *a felony*,
> — willfully harbored and protected Dale Delmont Reed.

*Teasley*, 58 P.3d at 100 (emphasis added). Though this instruction did not identify

23

a particular underlying felony—simply using instead the statute's general term "a felony"—the court nonetheless approved of it: "This instruction requires that the jury determine Teasley had knowledge that Reed was charged with, or convicted of a felony, to be found guilty for harboring a felon. As th[at] instruction comport[ed] with [the *Teasly* court's] interpretation of I.C. § 18-205, [it] determine[d] the district court did not err in providing this instruction to the jury." *Id.* at 100–101. Notably, the *Teasley* court made this point shortly after noting that jury instructions should contain "all matters of law necessary for the jury's information." *Id.* at 99. Accordingly, the *Teasley* court seems to have reached the same conclusion that was later reached in *Lampien*—that the particular underlying felonies effectively embodied in I.C. § 18-205's term "a felony" are means, not elements.

Beyond *Teasley*'s analysis of the import of the instructions at issue there, Idaho's uniform jury instructions "provide useful guidance on the content of state law." *Hamilton*, 889 F.3d at 693; *see Titties*, 852 F.3d at 1270 ("Oklahoma's Uniform Jury Instructions provide an additional source of state law guidance."); *De Leon*, 808 F.3d at 1231 n.9 ("[U]niform jury instructions have often guided . . . [the Tenth Circuit] in defining the bounds of [state] criminal law."); *see also United States v. Harris*, 844 F.3d 1260, 1266 n.2 (10th Cir. 2017) (incorporating

24

Colorado Criminal Jury Instructions into its divisibility analysis).[7]  Specifically,

the Idaho Supreme Court has expressly adopted uniform criminal jury instructions

and "recommended that whenever [they] contain an instruction applicable to a case

and the trial judge determines  that the jury should be instructed on that subject,

the judge should use the [uniform] instruction . . . , unless the judge finds that a

different instruction would more adequately, accurately or clearly state the law."

Idaho S. Ct. Order at 1 (dated Aug. 26, 2010).  The uniform instruction pertaining

to the § 18-205 offense states:

> A person who knows *a felony* was committed, and willfully
> conceals it from a [peace officer] [judge] [magistrate] [grand jury]
> [petit jury] [or] [harbors and protects the person charged with or
> convicted thereof,] is guilty as an accessory.

Idaho Criminal Jury Instrs. § 310 (emphasis added).  By the plain terms of these

instructions, jurors are obliged to find only that "a felony" has been committed;

they need not agree what that felony was.  And, if a jury does not "have to agree

on a particular [underlying felony] to convict," the particular felony is not an

element of the crime.  *Titties*, 852 F.3d at 1270–71; *see Mathis*, 136 S. Ct. at 2249

(observing that where a "list merely specifies diverse means of satisfying a single

---

[7]      Indeed, analyzing such instructions in connection with *Mathis*'s first tool, as court-approved guidance concerning "what proofs are required to convict" under the statute at issue, is arguably most apt in circumstances like these, "when a defendant pled guilty to the offense at issue," because, in such a situation, there would be no jury trial, and there would be no case-specific jury instructions in the conviction record documents. *Hamilton*, 889 F.3d at 701 n.3 (Briscoe, J., concurring).

element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item"); *Degeare*, 884 F.3d at 1251–52 (noting that "*Mathis* makes jury unanimity the touchstone of the means-or-elements inquiry" and that "we have likewise adopted a unanimity-focused approach to the means-or-elements question"); *cf. Jimenez*, 893 F.3d at 714 n.4 ("[W]e are not persuaded that Colorado's pattern jury instructions shed much light on the question before us. The first degree trespass instruction includes a space for courts to insert the name of the ulterior [i.e., underlying] offense . . . . But the pattern instruction does not tell us whether a jury would have to reach a unanimous determination if multiple ulterior offenses are at issue." (citation omitted)); *cf. also Lucio-Rayos*, 875 F.3d at 580 ("Colorado's Criminal Jury Instructions indicate the . . . state theft statute is divisible by setting forth different pattern instructions" for each statutory alternative.).

The foregoing state-law authorities—that is, the appellate caselaw and the uniform jury instructions—appear to establish with sufficient definitiveness that I.C. § 18-205 is indivisible as to the underlying felony. More specifically, they appear to show that § 18-205's general statutory term "a felony" does not effectively embody alternative, particular felonies as elements, which form separate accessory offenses. If true, the BIA erred in applying the modified

26

categorical approach in resolving the CIMT question. *See, e.g.*, *Hamilton*, 889 F.3d at 692 (holding that the modified categorical "approach is permissible *only* if the statute of conviction is divisible" (emphasis added)); *Degeare*, 884 F.3d at 1246 (noting that we "apply the modified categorical approach" when the statute is divisible). However, as relevant here, the government does invoke some Idaho caselaw in arguing that we cannot merely "follow what [these authorities] say[]." *Mathis*, 136 S. Ct. at 2256 (noting that when "a state court decision definitively answers the [elements-means] question," then "a sentencing judge need only follow what it says"); *see also Hamilton*, 889 F.3d at 692 (noting that "[e]ach" of *Mathis*'s three tools "may definitively" answer the elements-means question).

Specifically, the government cites *State v. Hauser*, 150 P.3d 296 (Idaho Ct. App. 2006), which involved a conviction for the alleged violation of the first subsection of I.C. § 18-205, which, as noted, criminalizes the willful withholding or concealing of knowledge of a prior felony from certain officials or official bodies. There, the defendant argued that "the State failed to present evidence from which a jury could find all of the required elements of the accessory after the fact charge" under § 18-205 because "the State did not prove she had actual knowledge of a felony." *Id.* at 299–300.

The government highlights that, in *Hauser*, the defendant "concede[d] that the State presented sufficient evidence to prove the elements of the underlying

27

offense"—felony malicious injury to property, I.C. § 18-7001—however, she "assert[ed] that the State did not present evidence by which a jury could find that she was an accessory to that crime [under I.C. § 18-205]." *Id.* at 300. The government seemingly infers from the *Hauser* defendant's concession concerning the State's ability to prove the particular underlying felony that "the underlying felony is relevant to a conviction [for an accessory offense] under § 18-205." Aplee.'s Resp. Br. at 10. In other words, the government seems to understand *Hauser* as establishing that the underlying felony is an element of a § 18-205 offense. Contrary to the government's belief, however, *Hauser* did not reach such a conclusion and is unavailing.

More specifically, we discern no indication in *Hauser* that the court's description of the *defendant*'s argument meant that *the Hauser court* believed that the State was obliged to prove—as an element of a § 18-205 offense—that the defendant was an accessory with respect to a *particular* underlying felony (i.e., felony malicious injury to property). Indeed, the court's analysis in rejecting the defendant's actual-knowledge argument belies the notion that a particular underlying felony is an element of the offense.

In defining the "crime of accessory," the court parroted the plain terms of the statute, noting that an accessory must "hav[e] knowledge that *a felony* has been committed"; it did not go further and assert that this knowledge must relate to a

28

particular underlying felony. *Hauser*, 150 P.3d at 300 (emphasis added). Furthermore, in rebuffing the defendant's contention that she must have actual knowledge that a felony has been committed—by which she apparently meant that she must be shown to have actually witnessed the commission of the felony—the court stated the following: "the knowledge requirement of I.C. § 18–205 . . . is met if the person charged as an accessory had such information as would lead a reasonable person to conclude that *a felony* had been committed." *Id.* (emphasis added). In announcing this holding, the court did not even hint that the requisite knowledge involves an additional layer of specificity pertaining to the prior commission of *a particular* underlying felony. Accordingly, *Hauser* does nothing to support the government's argument that the particular underlying felony is an element of the offense.[8]

---

[8] The government offers additional authorities in support of its divisibility argument. None of them are availing. Some are inapposite because they pertain to 18 U.S.C. § 3, the *federal* accessory statute—*not* to I.C. § 18-205. *See* U.S. SENTENCING GUIDELINES MANUAL § 2X3.1(a)(1) (U.S. SENTENCING COMM'N 2016); *see also United States v. Henning*, 77 F.3d 346, 350 (10th Cir. 1996). And the other cited authority that *does* address I.C. § 18-205 does not indicate that the particular underlying felony is an element of the offense. The government merely cites the statement from *Teasley* that "the text [of I.C. § 18-205] plainly requires that an accessory have knowledge on some level that *a felony* has been committed." 58 P.3d at 100 (emphasis added). As discussed *supra*, this language actually undercuts the government's position because it cannot be read naturally as indicating that the statute requires a showing that the defendant knew that a *particular* underlying felony had been committed.

29

In sum, the state-law authorities—i.e., the appellate caselaw and the uniform jury instructions—appear to establish with sufficient definitiveness that I.C. § 18-205 is indivisible as to the underlying felony, such that we "need only follow what [they] say[]." *Mathis*, 136 S. Ct. at 2256. The soundness of this conclusion, moreover, is underscored by our analogous decision in *Jimenez*, where, despite a seemingly murkier picture painted by the state-law authorities—including pattern jury instructions with "a space for courts to insert the name of the ulterior [i.e., underlying] offense"—we nevertheless concluded that the trespass statute at issue was "not divisible as to the ulterior offense." *Jimenez*, 893 F.3d at 714 n.4, 716. Even if this were not so—based on *Hauser* or otherwise—our application below of "the other tools in the *Mathis* toolbox" would lead us to side with Mr. Garcia-Morales.[9] *Degeare*, 884 F.3d at 1252; *see also Hamilton*, 889 F.3d at 696 ("Because [state] case law and uniform jury instructions do not show with certainty whether the [statutory] alternatives constitute elements or means, we must look elsewhere."). More specifically, once we also apply these other tools—such that all three are brought to bear—it is patent to us that we cannot

---

[9]     Neither party advances the "suggestion" here that when the *Mathis* tool of state-law authorities "*does* appear to 'definitively answer[ ]' the means-or-elements question, 'the analysis ends' and we *can't* employ the other *Mathis* tools." *Degeare*, 884 F.3d at 1250 n.2 (alteration in original) (second emphasis added) (quoting *Mathis*, 136 S. Ct. at 2256; Pet'r's Reply Br. at 5). Therefore, we need not assess the merits of this suggestion here in applying *Mathis*'s other tools (i.e., those beyond state-law authority).

reach a sufficient level of certainty that the particular underlying felonies that § 18-205's general term, "a felony," effectively embodies are elements of the offense, instead of merely various means of satisfying the "a felony" requirement. Indeed, our application of *Mathis*'s tools strongly suggests, if not clearly shows, that the particular felonies are merely means under the statute. Therefore, § 18-205 "isn't divisible and we must eschew the modified categorical approach." *Degeare*, 884 F.3d at 1248.

**3**

Among the *Mathis* court's tools is the text of the statute, and this tool undercuts the government's divisibility argument here. The plain text of the statute provides no signs that the particular underlying felonies § 18-205 effectively embodies—but does not list—are anything other than diverse factual means of satisfying the statutory element that "a felony" has been committed. I.C. § 18-205. Significantly, though it allows for exceptions, the Idaho Legislature generally does not vary the punishment for § 18-205 violations depending on the nature of the particular underlying felony. *See* I.C. § 18-206 ("Except in cases where a different punishment is prescribed, an accessory is punishable by imprisonment in the state prison not exceeding five (5) years, or by fine not exceeding fifty thousand dollars ($50,000), or by both such fine and imprisonment."). This strongly suggests that the conduct that the Legislature

31

aimed to punish under § 18-205 was being an accessory to *some* committed felony, irrespective of the identity of the particular felony. *Cf. Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then . . . they must be elements."); *accord Degeare*, 884 F.3d at 1247–48.

This point is highlighted by comparing the text of Idaho's accessory statute to the federal accessory statute, 18 U.S.C. § 3. Specifically, the generally uniform punishment scheme of I.C. § 18-205 differs markedly from its federal counterpart; the latter directly correlates the severity of punishment for the accessory offense with the severity of punishment for the underlying offense, mandating that "an accessory after the fact shall be imprisoned by not more than one-half the maximum term of imprisonment or . . . fined not more than one-half the maximum fine prescribed for the punishment of the principal." 18 U.S.C. § 3. Under *Mathis*'s rubric, it is patent that, under the *federal* accessory statute, the particular underlying offense is an element of the accessory offense. *Henning*, 77 F.3d at 350 (noting that, under the federal statute, "a defendant must have knowledge of the underlying offense in order to be convicted as an accessory after the fact"); *see Rivens*, 25 I. & N. Dec. at 627 n.5 ("[T]o be convicted of accessory after the fact under [the federal statute,] 18 U.S.C. § 3, a defendant must not only know that the person he or she assisted committed *some* felony offense but must also know what the particular offense was.").

32

The same cannot be said concerning the Idaho statute. More pointedly, the statutory text of § 18-205 does not allow us to be sufficiently "certain that [the] statute's [underlying] alternatives [i.e., particular felonies] are elements rather than means." *Degeare*, 884 F.3d at 1248. Indeed, one might reasonably glean from the statutory text that they are the latter. Therefore, the statutory text indicates that § 18-205 is not divisible as to the underlying felony.

**4**

Lastly, under *Mathis*'s rubric, "federal judges have another place to look: the record of a prior conviction itself." 136 S. Ct. at 2256. Specifically, *Mathis* authorizes us to take a "'peek' at the record of conviction to determine whether the [statutory] alternatives constitute elements or means." *Hamilton*, 889 F.3d at 697; *see Mathis*, 136 S. Ct. at 2256–57. That peek confirms that we cannot be sufficiently certain that the particular underlying felonies that § 18-205 effectively embodies are elements of the offense instead of merely means. Indeed, the record suggests that the underlying felonies are only means.

Mr. Garcia-Morales's criminal information does not specify the particular underlying felony associated with his accessory conviction. Instead, it only states that he "did willfully withhold or conceal knowledge that *a felony* has been committed by another person and withheld that information from law enforcement." A.R. at 166 (emphasis added). Yet, if commission of a particular

33

underlying offense was one of "the acts constituting the offense," Idaho law ordinarily would require it to be pleaded in the criminal charge. *See* I.C. § 19-1409 (noting that an "indictment must contain . . . . [a] statement of the acts constituting the offense in ordinary and concise language"); *see also id.* § 19-1304 ("The provisions of this code in relation to indictments, and all other provisions of law applying to prosecutions upon indictments . . . shall in the same manner and to the same extent, as near as may be, apply to informations and all prosecutions and proceedings thereon."). The use of the general statutory term, "a felony" in Mr. Garcia-Morales's charging document thus signals that the requisite element is the prior commission of "a felony," without any regard for the identity of the particular underlying felony; such underlying felonies are nothing more than means to satisfy the felony requirement. *See Mathis*, 136 S. Ct. at 2257.

***

In sum, our application of *Mathis*'s tools—state-law opinions (as well as related, court-approved instructional authority), statutory text, and the record of conviction—does not permit us to conclude with a sufficient level of certainty that the particular underlying felonies embodied in § 18-205's general term, "a felony," are elements rather than means. Consequently, "we hold that this portion of the statute is not divisible as to the [underlying felony]," and "[Mr. Garcia-Morales's] conviction does not qualify as a [CIMT]." *Jimenez*, 893 F.3d at 716. In light of

34

this conclusion, we must hold that the BIA's ruling to the contrary is irredeemably

flawed and cannot be sustained.

As a last gasp, the government contends that, even if § 18-205 is indivisible

as to the underlying felony, the BIA was still permitted to consider the particular

underlying felony in its CIMT analysis. As support for this contention, the

government points to *Shaw v. Sessions*, 898 F.3d 448 (4th Cir. 2018), where, based

on BIA precedent and its own precedent, the Fourth Circuit held that the BIA can

consider the underlying criminal object of a conspiracy conviction in a categorical

analysis to determine whether an alien is removable—even though the underlying

criminal object is *not* an element of the conspiracy offense. *See id.* at 452

("Shaw's argument rests on the incorrect assumption that the [BIA] must analyze

inchoate crimes—attempt, conspiracy, and solicitation—like any other: by looking

only to the elements of the statute criminalizing the inchoate conduct."). As the

court reasoned, it is ostensibly appropriate to treat inchoate crimes differently

when applying the categorical approach because such crimes distinctively "presup-

pose a purpose to commit another crime." *Id.* (alteration omitted) (quoting *Matter*

*of Beltran*, 20 I. & N. Dec. 521, 526–27 (BIA 1992)).

The government's argument rests on the premise that the crime at issue

here—i.e., an accessory offense (after the commission of a felony)—is also an

inchoate crime. But the government has not provided us with any authority to

35

support this proposition—not in its filings, and not when pressed at oral argument. And, notably, the case it cites—*Shaw*—lists examples of inchoate crimes but does *not* expressly include amongst them an accessory offense. *See id.* Moreover, classifying an accessory offense as an inchoate crime appears to be inconsistent with both Tenth Circuit and BIA precedent. *See United States v. Manatau*, 647 F.3d 1048, 1052 (10th Cir. 2011) (distinguishing between "the law of inchoate offenses" and "the law of accessory liability"); *In re Batista-Hernandez*, 21 I. & N. Dec. 955, 958 (BIA 1997) ("[A]ccessory after the fact . . . does not constitute an inchoate crime because the act . . . must, by its very nature, take place subsequent to the completion of the underlying felony."). Given all this, the government's conclusory suggestion that Idaho's accessory offense is an inchoate crime cannot gain traction. Therefore, we reject its contention that *Shaw* should guide our resolution of this appeal.

## III

For the foregoing reasons, we conclude that the BIA erred in determining that Mr. Garcia-Morales failed to carry his burden of proof to establish that his I.C. § 18-205 conviction is categorically *not* a CIMT. Consequently, Mr. Garcia-Morales is not precluded on this basis from seeking cancellation of removal. We thus **GRANT** Mr. Garcia-Morales's petition and **REMAND** the case to the BIA

36

for further proceedings consistent with this order and judgment.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge